[No. 26200-9-I.   Division One.   March 8, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. TERRY LEE JENKINS, *Appellant.*

*Elaine Winters* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Brenda Bannon* and *Peter Goldman, Deputies,* for respondent.

COLEMAN, J. — Terrance L. Jenkins appeals his judgment and sentence for one count of delivery of a controlled substance, alleging that the Superior Court applied an incorrect seriousness level in calculating the standard sentence range. In addition, Jenkins contends that the Superior Court erred in admitting certain testimony, in admitting evidence of prior felonies, and in failing to give a limiting instruction. Finally, Jenkins contends that he was denied effective assistance of counsel. We affirm.

On October 6, 1989, five Seattle police officers conducted a sting operation in the 2000 block of East Union Street. Accompanied by Officer Lisa Fenkner and Detective Joe Lam, Detective Linda Hill drove a dented 2-door Lincoln Continental slowly by a bus shelter. The officers made eye contact with individuals at the shelter and pulled up to the

curb. According to the officers, one of the individuals pushed through the group and leaned in the car window asking, "Are you looking?" He held up a baggie which contained a hard white substance and stated, "I have got some good stuff, man." At that point Officer Fenkner handed the man a previously Xeroxed $20 bill, exchanging it for the white substance.[1]

The undercover officers identified Terrance Jenkins as the person who exchanged the cocaine for the $20 bill. Detective Lam then radioed a description of Jenkins to two other police officers, George Shilipetar and Kenneth Hicks. Shortly thereafter, Officers Shilipetar and Hicks arrested Jenkins at the bus shelter, searched him, and found the Xeroxed $20 bill. Officers Fenkner, Lam, and Hill then drove by and identified Jenkins as the individual who made the buy.

Terrance L. Jenkins was charged by information with one count of violation of RCW 69.50.401(a), the Uniform Controlled Substances Act. At a pretrial hearing held on March 9, 1990, the State moved to admit evidence of Jenkins' prior VUCSA convictions for impeachment purposes. After weighing the factors enunciated in *State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1980), the court determined that the State could offer evidence of three prior VUCSA convictions by eliciting from Jenkins that he had been convicted of three prior felonies. However, the court refused to allow the State to introduce evidence that those three felonies were drug related.

At trial, Officer Hicks stated during cross examination that no weapons and no drugs were found on Jenkins at the time of his arrest. The court permitted Officer Hicks to testify on redirect that in his opinion, based on his training and experience, Jenkins' failure to carry drugs or weapons was not surprising.

Jenkins took the witness stand on his own behalf. He testified that he was at the bus shelter on East Union, that he observed three drug dealers approach the Lincoln Con-

---

[1]The substance was later tested by the Washington State Patrol Crime Laboratory and found to contain cocaine.

tinental, and that he pushed his way to the front of the group. Jenkins further testified that he asked to see the undercover officer's money, took the $20 bill out of her hand, and left without giving her any cocaine in exchange. Although he denied selling cocaine on October 6, 1989, he testified that he had been convicted of crimes in the past. On cross examination, he admitted that he had been convicted of felonies in January 1987, June 1988, and October 1988.

At the close of trial the Superior Court instructed the jury. However, the Superior Court failed to give a limiting instruction which informed the jury that evidence of Jenkins' prior felonies could be used only for impeachment purposes. Neither the State nor the defendant objected to this omission. However, after jury deliberations had begun, the State requested a limiting instruction, which the defendant concurred in. The court denied the request, stating that Jenkins testified as to the conviction on his direct examination. At that point, Jenkins did not offer a written limiting instruction, did not object to the Superior Court's refusal to give one, and did not state reasons supporting such an objection.[2]

Subsequently, the jury returned a verdict of guilty. On April 20, 1990, Jenkins was sentenced to serve 116 months in prison, a sentence within the standard range. Jenkins appeals.

We initially determine whether the Superior Court applied an incorrect seriousness level in calculating the standard range. Laws of 1989, ch. 271, the Omnibus Alcohol and Controlled Substances Act, raised the seriousness level for delivery of cocaine and heroin from 6 to 8 and became effective prior to the date on which the charged drug delivery occurred. During sentencing, the Superior Court applied seriousness level 8 in determining Jenkins' standard range. Jenkins alleges error on three grounds.

■ First, Jenkins contends that the seriousness level stipulated under the act does not apply because the act violates

---

[2]Defense counsel stated only that testimony concerning prior felonies was elicited on direct as a trial tactic, because counsel was aware that such testimony would be used for impeachment during cross examination.

the single subject requirement of the Washington State Constitution, article 2, section 19, which provides: "No bill shall embrace more than one subject, and that shall be expressed in the title." A broad and comprehensive title is permissible. However, the title must give notice of a bill's contents. *See Washington Toll Bridge Auth. v. State*, 49 Wn.2d 520, 523, 304 P.2d 676 (1956). In addition, there must be a "rational unity" between the subject of the title and the incidental subdivisions within the bill. *See State v. Grisby*, 97 Wn.2d 493, 498, 647 P.2d 6 (1982), *cert. denied sub nom. Frazier v. Washington*, 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983).

■ The title of the act gave adequate notice of its contents and that there was rational unity between all of the bill's provisions. The act was entitled the Omnibus Alcohol and Controlled Substances Act, and the title gave notice that the Legislature had enacted laws relating to the consumption of alcohol and controlled substances. The act addressed alcohol and drug problems by enacting provisions promoting public safety, by providing prevention and rehabilitation programs, and by increasing punishment upon conviction of specific offenses.[3] Although the civil and criminal provisions within the act cover a broad range of activities, each of those provisions furthers the legislative purpose of counteracting drug problems which are prevalent within our society. Thus, we conclude that the act does not violate the single subject requirement of the constitution.

■ Next, Jenkins contends that the seriousness level stipulated under the act does not apply because the act

---

[3] Public safety was fostered by the provision authorizing the Department of Social and Health Services to involuntarily commit persons for detoxification and by enactment of the neighborhood blight provisions. *See* Laws of 1989, ch. 271, §§ 307, 239. Prevention and rehabilitation was promoted through the community mobilization grant program and early intervention program contained in the act. *See* Laws of 1989, ch. 271, §§ 315, 310. Law enforcement was enhanced by the 1-party consent statute permitting police to place a "wire" on undercover agents during drug transactions, by modification of the civil forfeiture laws, and by modifications pertaining to school locker searches. *See* Laws of 1989, ch. 271, §§ 201, 211, 244. Stiffer punishment was provided by increasing the seriousness level for delivery of heroin and cocaine from 6 to 8. *See* Laws of 1989, ch. 271, § 102.

violates the proscription against "logrolling" implicit within article 2, section 19 of the constitution.

> Article 2, section 19 of our state constitution has a dual purpose: (1) to prevent "logrolling", or pushing legislation through by attaching it to other necessary or desirable legislation, and (2) to assure that the members of the legislature and the public are generally aware of what is contained in proposed new laws.

*Flanders v. Morris*, 88 Wn.2d 183, 187, 558 P.2d 769 (1977). However, Jenkins provides no evidence to support his allegation. In addition, because all the provisions within the act work to counteract drug and alcohol problems, the act raises no inference of special interest legislation unrelated to the act's general purpose.[4]

Finally, Jenkins contends that the seriousness level provided within the act does not apply because the act was superseded or repealed by subsequent enactments. The Omnibus Alcohol and Controlled Substances Act was one of four bills enacted during the 1989 legislative session which amended the seriousness level list contained within RCW 9.94A.320.[5] Each bill changed the seriousness level for different, specific crimes listed within RCW 9.94A.320, was enacted without reference to the other, and stated the Legislature's intent to reenact and amend RCW 9.94A.320.

---

[4]We find no merit to Jenkins' contention that the act also violated article 2, section 19 of the constitution because it contained both civil and criminal provisions. Jenkins supports his contention with citations to *State v. Tieman*, 32 Wash. 294, 298, 73 P. 375 (1903) (civil provision for compelling child support for illegitimate child not properly included within criminal statute) and *State ex rel. Henry v. Macdonald*, 25 Wash. 122, 126, 64 P. 912 (1901) (criminal provision for failing to send a child to school not properly included within " '[a]n act to establish a general and uniform system of public schools in the state of Washington"). However, *Tieman* and *Henry* do not state that criminal and civil provisions can never be combined. Where, as here, the title of an act is broad enough to encompass both its criminal and civil provisions, no article 2, section 19 violation arises.

[5]RCW 9.94A.320 consists solely of a table which lists the crimes included within each of the 15 seriousness levels identified under the Sentencing Reform Act of 1981. These crimes are grouped by seriousness of harm, are otherwise unrelated to one another, and range from aggravated murder at seriousness level 15 to vehicle prowling, eluding police, and reckless burning at seriousness level 1.

The four bills were filed in the following order. Laws of 1989, ch. 99 was filed in the Secretary of State's office on April 20, became effective July 1, and placed several previously unranked felonies on the seriousness level list. Laws of 1989, ch. 271, the Omnibus Alcohol and Controlled Substances Act, was filed on May 7 and raised the seriousness level for delivery and manufacture of cocaine from level 6 to level 8. Because the act contained an emergency clause, the relevant section became effective on the date of filing. Laws of 1989, ch. 405 was filed on May 13, took effect on July 23, and moved alcohol-related vehicular homicides from level 7 to level 8. Finally, Laws of 1989, 2d Ex. Sess., ch. 1 was filed on May 13 and placed residential burglary at level 4 and moved second degree burglary from level 2 to level 3. Although the section of chapter 1 which amended RCW 9.94A.320, the seriousness level list, was vetoed by the Governor, that veto was overridden on May 20 and the amendment took effect on July 1, 1990.

Citing *State ex rel. Gebhardt v. Superior Court*, 15 Wn.2d 673, 131 P.2d 943 (1942), Jenkins contends that the amendment to RCW 9.94A.320 contained in chapter 271, the Omnibus Alcohol and Controlled Substances Act, which raised the seriousness level for delivery of cocaine from 6 to 8, was superseded or repealed by chapters 99, 405 and 1, which became effective after chapter 271 and listed the seriousness level for delivery of cocaine at level 6. In *Gebhardt*, the 1941 Legislature passed two bills which amended section 4776 of Remington's Revised Statutes. Each bill was passed without reference to the other. *Gebhardt*, at 683. The first bill, Laws of 1941, ch. 42, protected teachers from termination without notice, was passed on March 5, provided that Remington's Revised Statutes § 4776 was "amended to read as follows", and was to become effective 90 days after the legislative session ended. *Gebhardt*, at 681-82. The second bill, Laws of 1941, ch. 179, authorized school directors to make joint purchases of school supplies, provided that Remington's Revised Statute § 4776 was "amended to read as follows", and took

effect on March 24 because it contained an emergency clause. *Gebhardt*, at 682-83. Thus, chapter 179, the later enacted statute, took effect before chapter 42. The *Gebhardt* court held "that chapter 179, being enacted after chapter 42, and having an emergency clause, became the law, and that chapter 42 never became effective." *Gebhardt*, at 687.

Jenkins' reliance on the *Gebhardt* rule is misplaced. First, *Gebhardt* is inapposite to the relationship between chapter 271 and chapters 405 and 1, because chapter 271, the *earlier* enacted statute, contained the emergency clause and took effect before chapters 405 and 1 (the later enacted statutes) were even filed. Second, *Gebhardt* is inapposite to the relationship between chapter 271 and chapters 99, 405, and 1 because *Gebhardt* was decided prior to the adoption of RCW 1.12.025(1), which states in relevant part:

> If at any session of the legislature there are enacted two or more acts amending the same section of the . . . code, each amendment without reference to the others, *each act shall be given effect to the extent that the amendments do not conflict in purpose, otherwise the act last filed* in the office of the secretary of state in point of time, *shall control*[.]

(Italics ours.) Therefore, under this provision, failing a conflict in purpose, each amendment may be given effect.

■■ The various amendments to RCW 9.94A.320 adopted in 1989 do not conflict in purpose. Each amendment made different and specific changes to the 1988 seriousness level list, and each change was prompted by a specific concern relating to the seriousness level of a specific crime. There is no reason to believe that the Legislature's purpose, as it responded one by one to each of these concerns, was to repeal its solution to the previous problem. Because each amendment can be given effect without affecting the result intended by the other, it cannot be said that the amendments conflict in purpose. Failing a conflict in purpose, RCW 1.12.025(1) requires that each amendment to RCW 9.94A-.320 be given the force of law.

Moreover, treating subsequently enacted amendments as superseding and repealing the earlier ones would violate the principle that "implied repeals of statutes are disfavored and courts have a duty to interpret statutes so as to give them effect." *Bellevue Sch. Dist. 405 v. Brazier Constr. Co.*, 103 Wn.2d 111, 122, 691 P.2d 178 (1984). Implied repeals are found only where the later statute is "evidently intended to supersede prior legislation on the subject" or where the two statutes are so inconsistent "that they cannot be reconciled and both given effect[.]" *Walton v. Absher Constr. Co.*, 101 Wn.2d 238, 242, 676 P.2d 1002 (1984) (quoting *U.S. Oil & Ref. Co. v. Department of Ecology*, 96 Wn.2d 85, 88, 633 P.2d 1329 (1981) (quoting *In re Chi-Dooh Li*, 79 Wn.2d 561, 563, 488 P.2d 259 (1971))).

The Legislature clearly did not intend chapters 99, 405, and 1 to supersede chapter 271 as it pertained to the seriousness level for delivery of cocaine. First, even though chapter 271 *took effect* prior to chapters 99, 405, and 1, chapters 99, 405, and 1 *were passed* by both houses of the Legislature *before* chapter 271 — chapter 99 passed the House on March 29 and the Senate on April 10, chapter 1 passed the House on April 11 and the Senate on April 17, chapter 405 passed the House on April 14 and the Senate on April 18, and chapter 271 passed both houses on April 22, 1989. It is illogical to assume that the Legislature intended its earlier bills to repeal its later one. Second, when the Legislature again amended RCW 9.94A.320 in 1990, it recognized the continuing vitality of chapter 271 by listing delivery of cocaine within the existing list of seriousness level 8 offenses.

Where there is no intent to supersede and where each amendment to RCW 9.94A.320 can be given effect, we find no basis for holding that chapter 271 was superseded by chapters 99, 405, and 1. Thus, we conclude that seriousness level 8 was correctly applied in determining Jenkins' sentence.

The judgment and sentence of the Superior Court are affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

PEKELIS, A.C.J., and AGID, J., concur.

Review denied at 121 Wn.2d 1032 (1993).