[No. 63415-7. En Banc.]

Argued March 28, 1996. Decided November 7, 1996.

*In the Matter of* JERRY J. BOOT, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent*, v. CARLOS
JULIAN CORNEJO, *Petitioner.*

*John T. Rodgers*, for petitioner Boot.
*Hugh M. Spall, Jr.*, for petitioner Cornejo.

*Jeffrey C. Sullivan, Prosecuting Attorney for Yakima County,* and *Bruce Hanify* and *Robert R. Northcott, Deputies; James R. Sweetser, Prosecuting Attorney for Spokane County,* and *Kevin M. Korsmo, Deputy,* for respondent.

TALMADGE, J. — Jerry Boot and Carlos Julian Cornejo are juveniles charged respectively with murder and kidnapping. Under an amendment to the Basic Juvenile Court Act, RCW 13.04, contained in the omnibus violence prevention act of 1994, LAWS OF 1994, 1st Sp. Sess., ch. 7 (the Act), both came under adult criminal court jurisdiction, without a hearing pursuant to RCW 13.40.110 in the juvenile court on the declination of juvenile court jurisdiction.

Boot and Cornejo now argue RCW 13.04.030(1)(e)(iv) permits a superior court to hold a hearing to determine whether persons who are less than 18 years of age should be subject to juvenile court jurisdiction even though the statute provides exclusive original adult court jurisdiction over juveniles who commit certain violent crimes. Boot and Cornejo also argue if a hearing is not permitted under the 1994 amendment, RCW 13.04.030(1)(e)(iv) is unconstitutional, violating numerous state and federal constitutional guarantees.

We hold RCW 13.04.030(1)(e)(iv) does not require a hearing pursuant to RCW 13.40.110 in juvenile court on the declination of juvenile court jurisdiction, nor does it permit a hearing in superior court to determine whether persons who are less than 18 years of age, meeting the criteria of the statute, are subject to juvenile court jurisdiction. We further hold the statute is not unconstitu-

tional, under either the United States or Washington Constitutions.

## ISSUES

1. Does RCW 13.04.030(1)(e)(iv) require a hearing in juvenile court pursuant to RCW 13.40.110 or permit a hearing in superior court to determine whether persons who are less than 18 years of age should be subject to juvenile court jurisdiction?

2. Does RCW 13.04.030(1)(e)(iv) violate WASH. CONST. art. II, § 19?

3. Does RCW 13.04.030(1)(e)(iv) violate due process or equal protection rights of youthful offenders subject to its provisions, if it does not require a hearing?

4. Does RCW 13.04.030(1)(e)(iv) violate constitutional double jeopardy principles?[1]

## FACTS

### A. FACTS RELATING TO BOOT

On December 27, 1994, Jerry Julius Boot and his brother Kevin forced a young woman into the back of their car at gunpoint, robbed her, and shot her in the head, killing her. Jerry Boot was 16 at the time of the offense. He is presently confined in the adult section of the Spokane County Jail with bond set at $1,000,000, awaiting trial on the charge of Premeditated Murder in the First Degree under RCW 9A.32.030(1)(a) and, in the alternative, Murder in the First Degree under RCW 9A.32.030(1)(c) (felony murder). Either offense is a "serious violent offense" as defined in RCW 9.94A.030. Because the charges against Boot come under the purview of RCW 13.04.030(1)(e)(iv), the State filed the case in the Spokane County Superior Court, rather than the juvenile court.

---

[1]Although Cornejo and Boot argue violation of various provisions of the Washington Constitution, they nowhere assert greater protections than under the Federal Constitution, and they do not address the requirements of *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

■ On February 14, 1995, Boot moved to have his case transferred to juvenile court for a hearing to determine whether he should be tried as a juvenile. The court denied the motion on May 5, 1995. Boot did not seek discretionary review of the trial court's decision, but filed a Personal Restraint Petition on September 11, 1995 with Division III of the Court of Appeals. He contended his "case should be remanded to the Superior Court with instructions to remand Mr. Boot's case to the Juvenile Division for a Declination Hearing." Personal Restraint Pet. at 6-7.[2]

## B. FACTS RELATING TO CORNEJO

Carlos Julian Cornejo was arrested and charged for his alleged involvement in the robbery of two vehicles and the kidnapping of three men (Cruz, Mitchell, and Huston) on July 21, 23, and 28, 1994. On September 12, 1994, the State filed an amended information charging Cornejo with five crimes: First Degree Robbery (Count I) (for the theft on July 21), First Degree Kidnapping (of Cruz) (Count II), First Degree Robbery (for the theft on July 23) (Count III), First Degree Kidnapping (of Mitchell) (Count IV), and First Degree Kidnapping (of Huston) (Count V). The kidnapping counts are "serious violent offenses" under RCW 9.94A.030(31)(a); the robbery counts are not.

---

[2]Although the State did not raise the issue below, and does not raise it here, there is some question as to whether Boot may obtain the relief he seeks through a personal restraint petition. "A personal restraint petition requires the court to adjudicate whether the petitioning prisoner is presently detained in violation of either the United States Constitution or the Constitution of the State of Washington." *In re Myers*, 91 Wn.2d 120, 122, 587 P.2d 532 (1978), *cert. denied sub nom. Myers v. Washington*, 442 U.S. 912, 99 S. Ct. 2828, 61 L. Ed. 2d 278 (1979). Boot must show his restraint is unlawful. RAP 16.4. Moreover, "[t]o obtain relief with respect to either constitutional or nonconstitutional claims, the petitioner must show that he was actually and substantially prejudiced by the error." *In re Personal Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835, *cert. denied*, 115 S. Ct. 146, 130 L. Ed. 2d 86 (1994). At this point, before either trial or sentencing, Boot may have difficulty showing any constitutional prejudice stemming from his restraint. Boot can at least make the colorable argument his present restraint is under the jurisdiction and auspices of the adult criminal court, and it is unlawful because he should be under the jurisdiction of the juvenile court. Because the disposition of Cornejo's case will dispose of all of Boot's contentions, judicial economy dictates we decide Boot's case now rather than dismissing his PRP.

On October 7, 1994, Cornejo moved for dismissal of the two first degree robbery counts.[3] The apparent reason for his motion was to allow for the trial in juvenile court of the robbery charges, insofar as they are not "serious violent offenses" requiring trial in superior court. On the same day, he moved to sever the first degree robbery and the kidnapping counts arising on July 21, 1994 from the other kidnapping and robbery counts arising on July 23 and 28, pursuant to CrR 4.4(b).

On November 29, 1994, the trial court entered two orders. The first order continued Cornejo's trial on the kidnapping charges until resolution of the robbery charges in juvenile court. The second order remanded to the juvenile court the question of whether the juvenile court should exercise jurisdiction over the first degree robbery counts. Subsequently, on May 31, 1995, the court commissioner for the juvenile division of the court entered an order extending jurisdiction over Cornejo for the first degree robbery charges until Cornejo's twenty-first birthday. Thus, Cornejo is presently awaiting trial on the kidnapping charges in superior court and trial on the robbery charges in juvenile court.

On February 3, 1995, Cornejo filed in the Court of Appeals a Motion for Discretionary Review, which was granted on May 18, 1995. On October 19, 1995, the Court of Appeals consolidated Boot's Personal Restraint Petition (PRP) with Cornejo's appeal. We granted direct review of Cornejo's appeal and Boot's PRP upon the transfer of the cases by the Court of Appeals. RAP 4.3.

## ANALYSIS

### A. RCW 13.04.030(1)(e)(iv) DOES NOT PERMIT A HEARING ON JUVENILE JURISDICTION

In 1994, the Legislature enacted comprehensive changes

---

[3]Although Cornejo filed three separate briefs in support of this motion, he has not designated them as clerk's papers pursuant to RAP 9.6.

to state law for the express purpose of deterring violent conduct. One of the areas addressed was the Basic Juvenile Court Act, RCW 13.04. The Legislature amended RCW 13.04.030 to bring certain offenses committed by 16- and 17-year-olds under the "exclusive original jurisdiction" of the adult criminal court.

In the ordinary case, a juvenile who is arrested for a crime comes under the exclusive original jurisdiction of the juvenile court for all proceedings enumerated in RCW 13.04.030, although certain matters are exclusively within the purview of the adult court. RCW 13.04.030(2).[4] After a hearing, however, the juvenile court may decline jurisdiction of an accused juvenile offender after finding "the declination would be in the best interest of the juvenile or the public," and transfer the case for adult criminal prosecution. RCW 13.40.110. The statute enumerates the prerequisites, based on age and the seriousness of the offense, under which the juvenile court may decline jurisdiction. The trial court must weigh these factors in deciding whether adult or juvenile court jurisdiction is appropriate. *State v. Furman*, 122 Wn.2d 440, 447, 858 P.2d 1092 (1993). Before the 1994 amendment at issue here, both Cornejo and Boot would have been entitled to a declination hearing in the juvenile court before their cases could come under the jurisdiction of the adult criminal court.

■ After the 1994 amendment to RCW 13.04.030(1)(e)(iv), the statute now provides:

> (1) Except as provided in subsection (2) of this section, the juvenile courts in the several counties of this state, shall have exclusive original jurisdiction over all proceedings:
>
> . . . .
>
> (e) Relating to juveniles alleged or found to have committed offenses, traffic infractions, or violations as provided in RCW 13.40.020 through 13.40.230, *unless*:

---

[4]The juvenile court is a division of the superior court. RCW 13.04.021(1).

. . . .

(iv) The juvenile is sixteen or seventeen years old and the alleged offense is: (A) A serious violent offense as defined in RCW 9.94A.030 committed on or after June 13, 1994;[5] or (B) a violent offense as defined in RCW 9.94A.030 committed on or after June 13, 1994, and the juvenile has a criminal history consisting of: (I) One or more prior serious violent offenses; (II) two or more prior violent offenses;[6] or (III) three or more of any combination of the following offenses: Any class A felony, any class B felony, vehicular assault, or manslaughter in the second degree, all of which must have been committed after the juvenile's thirteenth birthday and prosecuted separately. *In such a case the adult criminal court shall have exclusive original jurisdiction.*

If the juvenile challenges the state's determination of the juvenile's criminal history, the state may establish the offender's criminal history by a preponderance of the evidence. If the criminal history consists of adjudications entered upon a plea of guilty, the state shall not bear a burden of establishing the knowing and voluntariness of the plea[.]

(Emphasis added.) This addition to the Basic Juvenile Court Act is a reflection of the Legislature's expressed intent to address youth violence by increasing the "severi-

---

[5]A "serious violent offense" is a subcategory of violent offense and means:

"Murder in the first degree, homicide by abuse, murder in the second degree, assault in the first degree, kidnapping in the first degree, or rape in the first degree, assault of a child in the first degree, or an attempt, criminal solicitation, or criminal conspiracy to commit one of these felonies[.]"

RCW 9.94A.030(31)(a).

[6]RCW 9.94A.030(38)(a) defines "violent offense" as follows:

"Any felony defined under any law as a class A felony or an attempt to commit a class A felony, criminal solicitation of or criminal conspiracy to commit a class A felony, manslaughter in the first degree, manslaughter in the second degree, indecent liberties if committed by forcible compulsion, kidnapping in the second degree, arson in the second degree, assault in the second degree, assault of a child in the second degree, extortion in the first degree, robbery in the second degree, vehicular assault, and vehicular homicide, when proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug as defined by RCW 46.61.502, or by the operation of any vehicle in a reckless manner[.]"

ty and certainty of punishment for youth and adults who commit violent acts." LAWS OF 1994, 1st Sp. Sess., ch. 7, § 101. The Legislature here clearly determined to increase the punishment for youthful offenders for the most serious violent crimes by statutorily expanding the jurisdiction of the adult criminal court over 16- and 17-year-olds who commit such crimes without a hearing in juvenile court under RCW 13.40.110.

Although the specific language of RCW 13.04.030(1)(e)(iv) confers "exclusive original jurisdiction" on the adult court over specified youthful offenders like Boot and Cornejo, they argue the language of the statute does not forbid the adult court to decline jurisdiction in favor of the juvenile court.

To accept such a reading, we would have to disregard the simple, unmistakable, imperative language of the statute, as well as the Legislature's express intent to increase the severity and certainty of punishment for youth who commit violent acts. The statute vests exclusive original jurisdiction with the adult criminal court, and gives us no latitude to vest jurisdiction elsewhere. The statute does not contemplate declination hearings, and they would serve no purpose in light of the legislative decision to vest exclusive original jurisdiction in the adult criminal court.

▋ Moreover, once an adult court exercises jurisdiction over a youthful offender, the juvenile court no longer has jurisdiction over that youth. RCW 13.40.020(14) provides:

> "Juvenile," "youth," and "child" mean any individual who is under the chronological age of eighteen years and who has not been previously transferred to adult court pursuant to RCW 13.40.110 or who is otherwise under adult court jurisdiction[.]

This court said in *State v. Sharon*, 100 Wn.2d 230, 231, 668 P.2d 584 (1983): "Once a juvenile offender has been transferred to adult court, that person no longer meets the definition of a 'juvenile' over which the juvenile court has jurisdiction." *See also State v. Mitchell*, 32 Wn. App. 499, 500, 648 P.2d 456 (1982).

Boot argues the reference in RCW 13.04.030(1)(e)(iv) to a hearing on the juvenile's criminal history modifies subsection (A) as well as subsection (B) of the statute. Thus, under Boot's reading, it is not enough that a young person commit a serious violent offense to trigger adult court jurisdiction; the young person must also have a criminal history as defined in subsection (B). Because youth are otherwise entitled to a hearing on their criminal history, he argues, the hearing must somehow extend to all issues. He concludes because he has no criminal history, the new statute does not apply to him. Boot offers no authority for his interpretation, either from the legislative history or from the rules of statutory construction. We decline to adopt Boot's analysis.

Moreover, the statute unambiguously places the qualifying "and" clause squarely and only in subsection (B). The statute provides two ways to trigger adult court jurisdiction: *either* the youth commits a serious violent offense (subsection (A)), *or* the youth commits a violent offense *and* has a defined criminal history (subsection (B)). Boot's reading would collapse (B) into (A) and render meaningless the statute's distinction between serious violent offenses and violent offenses. Because Boot is charged with a serious violent offense, he falls under adult court jurisdiction automatically.

Finally, Cornejo (but not Boot) argues the new statute is in conflict with RCW 13.40.020(14), quoting from the statute: " 'Juvenile,' 'youth,' and 'child' mean any individual who is under the chronological age of eighteen years and who has not been previously transferred to adult court." Reply Br. of Appellant Cornejo at 4. He argues the words " 'who has not been previously transferred to adult court' show the judicial system must engage in some sort of proceedings before adult jurisdiction attaches." *Id.* This might be a valid argument were it not for the remaining phrase of RCW 13.40.020(14). The statute reads in its entirety as follows:

"Juvenile," "youth," and "child" mean any individual who is

under the chronological age of eighteen years and who has not been previously transferred to adult court pursuant to RCW 13.40.110 or *who is otherwise under adult court jurisdiction*[.]

(Emphasis ours.) The italicized phrase defeats Cornejo's argument. Cornejo is "otherwise under adult court jurisdiction" pursuant to the 1994 changes to the statute.

■ ■ RCW 13.04.030(1)(e)(iv) is unambiguous; we must give effect to the plain language of a statute. *Department of Licensing v. Lax*, 125 Wn.2d 818, 822, 888 P.2d 1190 (1995). The Legislature set up "exclusive original jurisdiction" in adult court over juveniles 16 or 17 years of age who committed the enumerated violent offenses. Because adult court jurisdiction is "exclusive" in these cases, the Legislature provided neither for a juvenile court hearing under RCW 13.40.110 nor for a hearing process by which the adult court could "decline" jurisdiction over these youthful offenders. We hold, therefore, the statutory imposition of adult court jurisdiction over the youthful offenders enumerated in RCW 13.04.030(1)(e)(iv) neither requires nor permits a hearing on juvenile court jurisdiction.[7]

B. RCW 13.04.030(1)(e)(iv) DOES NOT VIOLATE ARTICLE II, SECTION 19 OF THE WASHINGTON CONSTITUTION

Both Cornejo and Boot argue RCW 13.04.030(1)(e)(iv) violates WASH. CONST. art. II, § 19: "No bill shall embrace more than one subject, and that shall be expressed in the title." Although the Act covers a number of issues, including public health, community networks, firearms and other weapons, public safety, education, employment, and

---

[7]However, if the adult court determined the statutory criteria for its "exclusive original jurisdiction" under RCW 13.04.030(1)(e)(iv) were not met, the court would lack jurisdiction over the juvenile, in the absence of a declination hearing pursuant to RCW 13.40.110. RCW 13.04.030. *State v. Pritchard*, 79 Wn. App. 14, 20, 900 P.2d 560 (1995), *review denied*, 128 Wn.2d 1017, 911 P.2d 1342 (1996).

media, the title of the bill is "AN ACT Relating to violence prevention." LAWS OF 1994, 1st Sp. Sess., ch. 7, at 2196.

In our recent decision in *Washington Fed'n of State Employees v. State*, 127 Wn.2d 544, 901 P.2d 1028 (1995), we observed the constitutional provision "is to be liberally construed in favor of the legislation." *Id.* at 555. With respect to the title of the law, "this court has long recognized that a general title consisting of a few well-chosen words, suggesting the general subject stated, is all that is necessary to comply with the constitutional provision." *Id.* at 554. "Where the title is general, 'any subject reasonably germane to such title may be embraced within the body of the bill.' " *Id.* at 555-56 (citing *De Cano v. State*, 7 Wn.2d 613, 627, 110 P.2d 627 (1941)).

Although this omnibus law covers a variety of subjects, they are all related to its stated purposes, which are to:

> (1) Prevent acts of violence by encouraging change in social norms and individual behaviors that have been shown to increase the risk of violence; (2) reduce the rate of at-risk children and youth, as defined in RCW 70.190.010; (3) increase the severity and certainty of punishment for youth and adults who commit violent acts; (4) reduce the severity of harm to individuals when violence occurs; (5) empower communities to focus their concerns and allow them to control the funds dedicated to empirically supported preventive efforts in their region; and (6) reduce the fiscal and social impact of violence on our society.

LAWS OF 1994, 1st Sp. Sess., ch. 7, § 101, at 2197-98. The title, "AN ACT Relating to violence prevention," embraces all these purposes. "[A] title complies with the constitution if it gives notice that would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law." *Young Men's Christian Ass'n v. State*, 62 Wn.2d 504, 506, 383 P.2d 497 (1963). The title of this bill meets the constitutional test.

Cornejo and Boot also argue that because the Act

covers so many wide-ranging subjects, it violates the constitutional directive forbidding bills containing more than a "single subject." WASH. CONST. art. II, § 19. We have used the "rational unity" test to determine if a bill contains a single subject. "All that is required is that there be some 'rational unity' between the general subject and the incidental subdivision." *Washington Fed'n*, 127 Wn.2d at 556 (citing *State v. Grisby*, 97 Wn.2d 493, 498, 647 P.2d 6 (1982), *cert. denied sub nom. Frazier v. Washington*, 459 U.S. 1211, 103 S. Ct. 1205, 75 L. Ed. 2d 446 (1983)). Although we have found only nine violations of the "single subject" rule since 1891, *id.* at 571-72 n.6 (Talmadge, J., concurring in part/dissenting in part), articulation of the elements of rational unity has often proved elusive.

██ ██ The principal allegedly "non-germane" sections of the Act cited by Cornejo and Boot are sections other than the amendments to RCW 13.04.030(1)(e)(iv). Thus, even if Boot and Cornejo are correct about the other sections of the Act, the validity of RCW 13.04.030(1)(e)(iv) is unaffected. They do not contend RCW 13.04.030(1)(e)(iv) is itself outside the scope of the title. Moreover, a severability clause preserves the validity of the statute despite any invalidation of other sections of the Act. LAWS OF 1994, 1st Sp. Sess., ch. 7, § 913. *State v. Anderson*, 81 Wn.2d 234, 239-40, 501 P.2d 184 (1972).

The Legislature said in the intent section of the 1994 Act:

> The legislature finds that violence is abhorrent to the aims of a free society and that it can not be tolerated. State efforts at reducing violence must include changes in criminal penalties, reducing the unlawful use of and access to firearms, increasing educational efforts to encourage nonviolent means for resolving conflicts, and allowing communities to design their prevention efforts.

> The legislature finds that the problem of violence can be addressed with many of the same approaches that public health programs have used to control other problems such as infectious disease, tobacco use, and traffic fatalities.

LAWS OF 1994, 1st Sp. Sess., ch. 7, § 101, at 2197. The Legislature found it necessary to combine diverse provisions into a single omnibus act to address a single problem in a comprehensive way.

 In rejecting a similar challenge to an analogous omnibus bill dealing with alcohol and controlled substances (the Omnibus Alcohol and Controlled Substances Act of 1989), the Court of Appeals said:

> Although the civil and criminal provisions within the act cover a broad range of activities, each of those provisions furthers the legislative purpose of counteracting drug problems which are prevalent within our society. Thus, we conclude that the act does not violate the single subject requirement of the constitution.

*State v. Jenkins*, 68 Wn. App. 897, 901, 847 P.2d 488, *review denied*, 121 Wn.2d 1032, 856 P.2d 383 (1993). *See also State v. Acevedo*, 78 Wn. App. 886, 887-91, 899 P.2d 31 (1995), *review denied*, 128 Wn.2d 1014, 911 P.2d 1343 (1996); *State v. Knight*, 79 Wn. App. 670, 676-77, 904 P.2d 1159 (1995), *review denied*, 129 Wn.2d 1005 (1996). "[I]f the legislation is an omnibus bill designed by the Legislature or the people to address a larger subject area, the wishes of the Legislature or the people in addressing an issue comprehensively in a single bill may be respected." *Washington Fed'n*, 127 Wn.2d at 575-76 (Talmadge, J., concurring in part/dissenting in part).

Here, the 1994 Act is an omnibus bill, the stated purpose of which is to address a single problem, violence prevention, in a comprehensive manner. The Act meets the rational unity test of article II, section 19 of our constitution as a legitimate expression of the legislative purpose.

## C. RCW 13.04.030(1)(e)(iv) DOES NOT VIOLATE THE EIGHTH AMENDMENT

 Cornejo (but not Boot) argues the Eighth Amendment is violated if he is committed to the adult criminal

court without the benefit of a hearing.[8] Cornejo makes no argument relying specifically on article I, section 14, of the Washington Constitution, prohibiting "cruel punishment," so we will consider only federal constitutional law. *City of Spokane v. Douglass*, 115 Wn.2d 171, 176-77, 795 P.2d 693 (1990).

"The Eighth Amendment, which prohibits 'cruel and unusual punishments', applies to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962)." *State v. Dodd*, 120 Wn.2d 1, 13 n.2, 838 P.2d 86 (1992). Before any scrutiny of a punishment under Eighth Amendment standards can occur, however, there must be a punishment. Neither Cornejo nor Boot has even stood trial yet, let alone been sentenced. Thus, neither one has been punished. The Eighth Amendment question will not ordinarily be ripe for adjudication until Cornejo and Boot are actually sentenced. *First Covenant Church of Seattle v. Seattle*, 114 Wn.2d 392, 399-400, 787 P.2d 1352 (1990). Cornejo does not argue and offers no authority for the proposition that either vesting adult court jurisdiction over him without a hearing or trying him as an adult amounts to an unconstitutional punishment.

The only possible Eighth Amendment issue before the court now is the claim adult court jurisdiction in and of itself is punishment. Neither Boot nor Cornejo has asserted as much, but, plainly, while the juvenile court's ability to punish them will end at their twenty-first birthdays, the adult criminal court is capable of assessing much longer sentences. Yet, the parties advance no support for such an assertion. Should they, they would have to contend with the contrary holding of *State v. Massey*, 60 Wn. App. 131, 803 P.2d 340, *review denied*, 115 Wn.2d 1021, 802 P.2d 126 (1990), *cert. denied*, 449 U.S. 960, 111 S.

---

[8]For all of the constitutional arguments Boot and Cornejo raise with respect to the 1994 amendments to RCW 13.04.030(1)(e)(iv) bear a heavy burden of proof. They must show the statute is unconstitutional beyond a reasonable doubt. *State v. Rogers*, 127 Wn.2d 270, 279, 898 P.2d 294 (1995).

Ct. 1584, 113 L. Ed. 2d 648 (1991), where the Court of Appeals affirmed the sentence of life imprisonment without parole, applied to a 13-year-old, against an Eighth Amendment challenge.

We hold, therefore, the Eighth Amendment is not violated if a youthful offender is tried as an adult or receives a sentence in adult criminal court extending beyond the offender's twenty-first birthday.

## D. RCW 13.04.030(1)(e)(iv) DOES NOT VIOLATE THE FOURTEENTH AMENDMENT

Both Cornejo and Boot claim their Fourteenth Amendment right to due process is violated when they are assigned to adult court without a hearing.[9] Boot argues the new statute deprives him of procedural due process (notice and opportunity to be heard why he should be tried as a juvenile). Cornejo also argues the new statute deprives him of procedural due process as well as substantive due process.

### 1. Procedural Due Process

Juveniles charged with crimes have a right to procedural due process. *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). This right does not translate necessarily into a right to a hearing on juvenile court jurisdiction. Only when the courts have *discretion* by statute to assign juvenile or adult court jurisdiction for a particular juvenile does the right to such a hearing attach. *State v. Furman*, 122 Wn.2d 440; *Kent v. United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966).

Implicit in their argument they have a constitutionally protected right to a hearing is the assumption Boot and Cornejo have a right to be tried as juveniles. But:

---

[9]Cornejo and Boot make no arguments relying specifically on WASH. CONST. art. I, § 3, so we will consider only federal constitutional law. *Douglass*, 115 Wn.2d at 176-77.

"[T]here is no constitutional right to be tried in a juvenile court." *State v. Dixon*, 114 Wn.2d 857, 860, 792 P.2d 137 (1990); *State v. Oreiro*, 73 Wn. App. 868, 871 P.2d 666 (1994); *State v. Sandomingo*, 39 Wn. App. 709, 695 P.2d 592 (1985); *State v. Sharon*, 33 Wn. App. 491, 655 P.2d 1193 (1982) (Andersen, J.), *aff'd*, 100 Wn.2d 230, 668 P.2d 584 (1983); *State v. Hodges*, 28 Wn. App. 902, 626 P.2d 1025 (1981). Thus, the new statute does not deprive Cornejo and Boot of any constitutionally protected right merely by conferring adult criminal court jurisdiction over them without a hearing.

2. Substantive Due Process

Cornejo argues the new statute deprives him of substantive due process by taking away his "substantive constitutional right to punishment in accordance with one's culpability, which in turn, depends, in part, on one's ability to make reasoned adult judgments about the consequences of one's acts." Cornejo's Reply Br. of Appellant at 1. Relying chiefly on *Thompson v. Oklahoma*, 487 U.S. 815, 108 S. Ct. 2687, 101 L. Ed. 2d 702 (1988), he asserts the Legislature does not have an unfettered right to impose adult criminal court jurisdiction on juveniles.

In *Thompson*, the Supreme Court held "the Eighth and Fourteenth Amendments prohibit the execution of a person who was under 16 years of age at the time of his or her offense." *Id.* at 838. The following term, however, the Supreme Court held in *Stanford v. Kentucky*, 492 U.S. 361, 109 S. Ct. 2969, 106 L. Ed. 2d 306 (1989) the Eighth Amendment did *not* preclude the death penalty against 16- or 17-year-old defendants. *Furman*, 122 Wn.2d at 456. *Thompson* involved a 15-year-old sentenced to death. Neither Cornejo nor Boot has been sentenced to death, and both were 16 when the crimes for which they are accused occurred. Moreover, the Supreme Court in *Stanford*, decided the year after *Thompson*, upheld the imposition of a death penalty on a 16-year-old.

Although the *Thompson* Court enunciated the principle,

"less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult," *Thompson*, 487 U.S. at 835, Cornejo has cited no authority for the proposition the reasoning in *Thompson*, a capital case, applies to crimes not calling for the death penalty. We said in *Grisby*, 97 Wn.2d at 498: "There is no analogy between the death penalty and life imprisonment without parole. As the Supreme Court has observed, 'the penalty of death is qualitatively different from a sentence of imprisonment, *however long.*' " *Accord State v. Stevenson*, 55 Wn. App. 725, 737, 780 P.2d 873 (1989) ("The *Thompson* Court prohibited no punishment except the death penalty, and there is absolutely nothing in that decision that supports a broader restriction."), *review denied*, 113 Wn.2d 1040, 785 P.2d 827 (1990).

▆ We hold trial in adult court does not violate the substantive due process rights of the petitioners. Sixteen- and seventeen-year-old violent offenders can be tried as adults in noncapital cases without a prior determination of their ability to make judgments about the consequences of their acts. *See* RCW 9.94A.390(1)(e); *State v. Scott*, 72 Wn. App. 207, 218-19, 866 P.2d 1258 (1993), *aff'd sub nom. State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995).

E. RCW 13.04.030(1)(e)(iv) DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSES OF THE UNITED STATES AND WASHINGTON CONSTITUTIONS

Cornejo argues that because the 1994 amendment to RCW 13.04.030(1)(e)(iv) automatically assigns him to adult criminal court, it violates his right to equal protection because those younger than 16 are entitled to a decline hearing. Cornejo, however, does not differentiate between the equal protection clause of the Fourteenth Amendment and WASH. CONST. art. I, § 12, so our analysis is based on the Fourteenth Amendment. *Douglass*, 115 Wn.2d at 176-77.

▆▆ Juveniles are neither a suspect class nor a semi-

suspect class. *State v. Schaaf,* 109 Wn.2d 1, 19, 743 P.2d 240 (1987). Thus, the rational relationship test applies here to the analysis of the challenged statute. As we said in *State v. Shawn P.,* 122 Wn.2d 553, 561, 859 P.2d 1220 (1993) (holding the mandatory revocation of driving privileges, which applies only to minor teenagers who are determined to have violated the minor possessing/consuming alcohol law, does not violate equal protection): "The rational relationship test is the most relaxed and tolerant form of judicial scrutiny under the equal protection clause. Under this test, the legislative classification will be upheld unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives."

Cornejo argues it is impermissible for the Legislature to draw a distinction between a young person who commits a crime one second before his sixteenth birthday, and one who commits a crime one second after his sixteenth birthday. This is precisely the distinction the Legislature has made, however, in declaring those under 18 to be juveniles, and it is precisely the kind of distinction the Legislature is empowered to make. *In re Burtts' Welfare,* 12 Wn. App. 564, 574, 530 P.2d 709 (Horowitz, J.), *review denied,* 85 Wn.2d 1014 (1975).

The Legislature stated one of its objectives in adopting the Act was to "increase the severity and certainty of punishment for youth and adults who commit violent acts."[10] LAWS OF 1994, 1st Sp. Sess., ch. 7, § 101. Trying 16- and 17-year-olds who commit certain crimes as adults is likely to increase the severity of punishment, and is thus relevant to a legitimate state objective. There is a rational basis for RCW 13.04.030(1)(e)(iv).

Finally, Cornejo expresses a concern regarding prosecutor charging decisions, arguing violation of equal protection for a prosecutor to have the discretion to set the punishment for a juvenile offender by charging him or her

---

[10]Cornejo mentions only prevention of violence as the purpose of LAWS OF 1994, 1st Sp. Sess., ch. 7, even though he cites directly to the *six* purposes the Legislature listed. Br. of Appellant at 14.

with a crime that would be triable in adult criminal court rather than juvenile court. He cites a 1970 case, *State v. Zornes*, 78 Wn.2d 9, 21, 475 P.2d 109 (1970), as support. This court noted in *City of Kennewick v. Fountain*, 116 Wn.2d 189, 192-93, 802 P.2d 1371 (1991), however, "the later case of *United States v. Batchelder*, 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979) overrules *Zornes* as to analysis under the Fourteenth Amendment."

Moreover, Cornejo is not without recourse. If a prosecutor overcharges a young person in the hope of securing adult court jurisdiction over that youth pursuant to the statute, the youth may file a motion under *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986), to challenge the sufficiency of the State's evidence to establish a prima facie case for all of the elements of the charge.

In summary, RCW 13.04.030(1)(e)(iv) as amended in 1994 does not violate Boot's or Cornejo's right to equal protection of the laws.[11]

### F. RCW 13.04.030(1)(e)(iv) DOES NOT VIOLATE THE DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES AND WASHINGTON CONSTITUTIONS

The trial court bifurcated the kidnapping and robbery charges against Cornejo, allocating the charges between the adult and juvenile courts. Cornejo argues double jeopardy[12] is violated because the two charges are being tried in separate jurisdictions, and there can be no merger of the charges, even if the evidence shows the robbery was

---

[11]The concurrence expresses concern about the possibility of inequitable *application* of the new statute. The parties here raise only a *facial* challenge to the 1994 amendment to RCW 13.04.030. Our law already addresses inequitable prosecutorial charging: "[Prosecutorial charging] discretion is . . . subject to constitutional constraints, and selective enforcement deliberately based on unjustifiable standards does raise equal protection concerns." *State v. Talley*, 122 Wn.2d 192, 214, 858 P.2d 217 (1993). A prosecutor has no discretion to charge two offenders differently based on race, for instance.

[12]Cornejo does not differentiate between the Fifth Amendment and WASH. CONST. art. I, § 9, so our analysis is based on the Fifth Amendment. *Douglass*, 115 Wn.2d at 176-77.

incidental to the kidnapping. *See State v. Vladovic*, 99 Wn.2d 413, 417-21, 662 P.2d 853 (1983) (discussing merger doctrine). Although Cornejo is correct, he contrived this situation by moving to sever the kidnapping from the robbery charges. We hold in any event both charges must be tried in adult criminal court.

▮▮▮ The key jurisdictional issue was decided at the time the charges were first instituted against Cornejo. "[J]urisdiction over offenses committed by a juvenile is to be determined at the time proceedings are instituted against the offender." *State v. Calderon*, 102 Wn.2d 348, 351-52, 684 P.2d 1293 (1984). By virtue of the kidnapping charges, which conferred adult court jurisdiction over him, Cornejo is automatically under adult court jurisdiction. RCW 13.40.020(14).

▮▮▮ The trial court erred in bifurcating the robbery charges and assigning them to juvenile court because the juvenile court could not have jurisdiction over Cornejo once he came under the jurisdiction of the adult criminal court. We vacate the trial court's order severing the charges, so as to permit the filing of a proper information against Cornejo on all charges in adult criminal court.

## CONCLUSION

The 1994 Legislature attempted in the Act to address the prevalence of violence in our society, particularly the violent tendencies of certain young people. RCW 13.04.030(1)(e)(iv), as amended in 1994, assigns exclusive original adult court jurisdiction over specific serious crimes of violence committed by certain enumerated young people. The 1994 Act survives scrutiny under WASH. CONST. art. II, § 19. RCW 13.04.030(1)(e)(iv), as written, does not violate the cruel and unusual punishment prohibition of the Eighth Amendment. The statute violates neither the due process nor the equal protection clauses of the Fourteenth Amendment. Finally, the statute need not cause any Fifth Amendment double jeopardy violation so

long as all charges are properly brought in the same court.[13]

We dismiss Boot's personal restraint petition. We affirm the Yakima Superior Court order finding adult court jurisdiction over Cornejo, but we vacate the trial court's order assigning the robbery charges against Cornejo to juvenile court.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, and JOHNSON, JJ., concur.

MADSEN, J., concurs in the result.

ALEXANDER, J. (concurring) — I concur with the majority insofar as it determines that RCW 13.04.030(1)(e)(iv) survives a facial challenge to its constitutionality. I write separately only to express my concern that the statute could be applied in a way that is violative of equal protection or due process guaranties, or both.

Fundamentally, persons who are similarly situated must receive like treatment from the government. *State v. Phelan*, 100 Wn.2d 508, 512, 671 P.2d 1212 (1983). Stated another way, when members of the same class are accorded different treatment under a statute, there is an equal protection violation unless there is a rational basis for the disparate treatment.[14] *Forbes v. City of Seattle*, 113 Wn.2d 929, 943, 785 P.2d 431 (1990). Conversely, "[w]here

---

[13]Several other jurisdictions have considered and rejected similar challenges to statutes conferring adult court jurisdiction on certain juveniles without a hearing: *Bishop v. State*, 265 Ga. 821, 462 S.E.2d 716, 718 (1995) (upholding statute conferring superior court jurisdiction over all juveniles accused of a felony); *State v. Anderson*, 108 Idaho 454, 700 P.2d 76, 79 (1985) (upholding statute conferring adult criminal court jurisdiction over juveniles accused of certain violent acts); *People v. Reed*, 125 Ill. App. 3d 319, 465 N.E.2d 1040, 1043-44 (1984) (no deprivation of equal protection or substantive or due process rights when statute requires juveniles who commit certain felonies to be tried as adults); *State v. Pilcher*, 655 So. 2d 636, 641-42 (La. App.) (statute divesting juvenile court of jurisdiction over certain crimes committed by juveniles did not violate any constitutional rights and was valid exercise of police power), *writ denied*, 662 So. 2d 466 (La. 1995).

[14]Governmental action that implicates a person's liberty interest, but does not otherwise involve a suspect or semisuspect class, will be subject to the rational basis test. *State v. Manussier*, 129 Wn.2d 652, 673, 921 P.2d 473 (1996); *State v. Coria*, 120 Wn.2d 156, 171, 839 P.2d 890 (1992).

persons of different classes are treated differently, there is no equal protection violation." *Forbes*, 113 Wn.2d at 943.

In determining if there is a danger of unequal application of the statute we are reviewing in this case, it is important to define the class that should receive equal treatment under it. If the class is viewed as 16- or 17-year-old juveniles who are alleged to have committed serious violent offenses, there is no potential for unequal treatment because all within that class are treated the same —they will be charged and dealt with in adult court. On the other hand, if the class is viewed as all 16- or 17-year-old juveniles convicted of nonenumerated offenses,[15] it can readily be seen that application of the statute may result in disparate treatment of some members of the class.

A hypothetical scenario helps make the point that, under the pertinent statutory scheme, a 16- or 17-year-old juvenile could receive treatment that is substantially different than the treatment afforded a similarly situated juvenile of that age and for reasons that may not be rational. In the example, two 17-year-old juveniles, *A* and *B*, are arrested as accomplices to the same assault. If the prosecutor should choose to charge *A* with the offense of second degree assault for his conduct, the charge would have to be leveled in juvenile court unless the prosecutor should seek an order remanding him to adult court. Upon conviction, *A* would remain under the jurisdiction of the juvenile court. On the other hand, if the prosecutor should choose, for whatever reason, to charge *B* with first degree assault for his part in the criminal enterprise, *B* would be charged in superior court because first degree assault is a serious violent offense. RCW 13.04.030(1)(e)(iv)(A); former RCW 9.94A.030(29)(a) (1994).

In our hypothetical case, if *B* is found guilty, based on a guilty plea or a finding of guilt of the lesser degree of the

---

[15]RCW 13.04.030 subjects 16- and 17-year-old juveniles to the original jurisdiction of superior court if they are alleged to have committed one of the crimes listed under subsection (1)(e)(iv)(A) or (B) (the "enumerated offenses"). Juveniles are subject to the original jurisdiction of juvenile court if they allegedly committed any other offense (the "nonenumerated offenses").

charged crime, second degree assault, that defendant would be convicted of the same offense as the first offender, *A*. However, the penalty meted out to *B* would be significantly greater than that received by *A*, who was originally charged with second degree assault. This inequity would occur because *B* was found guilty in superior court. Furthermore, *B*, unlike his counterpart, *A*, would suffer the increased stigma that is associated with a conviction for an adult crime and would not have access to the rehabilitative benefits that are available to an offender in juvenile court. There is, on the surface at least, no rational basis for distinguishing between the two juveniles in this hypothetical case, and yet the treatment afforded to one of them, which flows entirely from the prosecutor's charging decision made pursuant to RCW 13.04.030(1)(e)(iv), is substantially different.

I must concede that there might be a rational basis for *B* to be in adult court. Indeed, many juveniles who are originally charged with an offense in juvenile court are transferred to adult court pursuant to the decline process provided in RCW 13.40.110. In such cases, though, the juvenile court may not transfer the juvenile to superior court without conducting a hearing at which it is to consider all of the factors set forth by the United States Supreme Court in *Kent v. United States*, 383 U.S. 541, 566-67, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966).[16]

The majority suggests that protection against inequita-

---

[16]The eight determinative factors are:

"1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

"2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

"3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

"4. The prosecutive merit of the complaint, i.e., whether there is evidence upon which a Grand Jury may be expected to return an indictment (to be determined by consultation with the United States Attorney).

"5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the U.S. District Court for the District of Columbia.

ble application of the statute is provided by the constitutional restraints on the prosecutor's charging decision.[17] While in the abstract such restraints exist, there is no provision in this statute for a judicial proceeding where the prosecutor's discretion is tested. Although I will presume good faith on the part of the charging authority, that is not sufficient to protect a child's constitutional rights. *Hughes v. State*, 653 A.2d 241 (Del. Supr. 1994).

The inequity I have focused on here could be easily cured by the Legislature. Indeed, one state, Georgia, has done so by giving the superior court of that state statutory authority to transfer to juvenile court any juvenile who initially fell under the superior court's jurisdiction by being charged with an enumerated offense, if the juvenile is subsequently convicted of a lesser included offense that was not an enumerated offense. Ga. Code Ann. 15-11-5(b)(2)(A), (D) (Michie 1994).

I recognize that a case with facts like those set forth in my hypothetical example may never arise. Perhaps all juvenile offenders who are charged with an enumerated offense will, like the defendants here, be found guilty of the charged offense or will be acquitted. In either event, there would be no equal protection or due process issue. I find that prospect unlikely, however, and suggest that we may

"6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

"7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.

"8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court." *Kent*, 383 U.S. at 566-67.

[17]The majority also suggests that the defendant's ability to challenge the sufficiency of the State's evidence to establish a prima facie case for all of the elements of the charged crime pursuant to *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986), effectively cures the problem. In ruling on such motions, however, the trial court looks at the evidence in the light most favorable to the State. *Knapstad*, 107 Wn.2d at 353. It is still possible, therefore, for a prosecutor to file a first degree assault charge, prevail on a *Knapstad* motion, and obtain a conviction of the defendant for second degree assault.

soon be confronted with the issue in a case in which a 16- or 17-year-old finds himself or herself in superior court convicted of a nonenumerated offense without having been afforded a hearing to determine if adult court is the appropriate setting for that juvenile.

SANDERS, J., concurs with ALEXANDER, J.