[No. 44374.   En Banc.   January 27, 1977.]

MICHAEL ROBERT MCRAE, *Petitioner,* v. THE STATE OF WASHINGTON, *Respondent.*

*Robert T. Farrell, Allen M. Ressler,* and *John H. Hertog, Jr.,* for petitioner.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Richard A. Strophy, Chief Criminal Deputy,* for respondent.

HOROWITZ, J.—This is a petition for post–conviction relief filed under CrR 7.7 by Michael R. McRae in the Court of Appeals, Division Two, the cause then being certified to this court. The issue raised is whether the doctrine of *Dillenburg v. Maxwell,* 70 Wn.2d 331, 413 P.2d 940 (1966) should be applied retroactively.

McRae, then approximately 16 years of age, was committed to the State Youth Authority by the Superior Court in King County on November 27, 1964, on charges of car theft, drinking, and hit and run driving. On February 11, 1965, he and two other escapees from the Cedar Creek Forest Camp were arrested for stealing a car. On February 18, 1965, the chief probation officer filed a petition in the Thurston County Juvenile Court alleging the matters described and recommended the juvenile court decline jurisdiction and remand McRae to the Superior Court in Thurston County for appropriate action as an adult. The juvenile court, without a hearing or the appointment of counsel for

McRae—an indigent—on February 18, 1965, declined juris-
diction and ordered McRae transferred to the superior
court for further handling as an adult.

Shortly thereafter McRae was charged with grand lar-
ceny of the car last referred to. He received court appointed
counsel and pleaded guilty at his arraignment. No attack
was made upon the validity of the juvenile court's decline
proceedings. The court deferred sentence for 3 years, upon
condition among other things, that defendant maintain
good behavior.

On December 23, 1965, the Thurston County prosecuting
attorney filed a petition to set aside McRae's deferral of
sentence for violation of conditions imposed upon sentenc-
ing. The petition alleged defendant had aided and abetted
a burglary, committed larceny by passing a forged check,
associated with other probationers both adult and juvenile,
illegally purchased beer as a minor and had driven a motor
vehicle without a valid Washington driver's license. At the
hearing, McRae was informed of his right to retain counsel
of his own choice and to have additional time to obtain
such counsel. Defendant stated he did not desire to obtain
counsel nor did he wish additional time. In February 1966,
after hearing, the court revoked the order deferring sen-
tence and imposed the maximum 15 year sentence and
directed him to pay costs of prosecution.

On May 3, 1976, more than 11 years after the February
18, 1965, declination order, McRae filed the instant petition
for post–conviction relief. He contends the declination
order was entered without a hearing, violating his statutory
and due process rights under RCW 13.04.120 as construed
in *Dillenburg v. Maxwell, supra.* To uphold this contention
would require that *Dillenburg* be applied retroactively.
*Dillenburg* did not state whether its holding applied retro-
actively although the decision itself was retroactively
applied in that case.

The *Dillenburg* court held that under RCW 13.04.120 in
light of *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d
84, 86 S. Ct. 1045 (1966), a juvenile court without a hearing

may not decline jurisdiction and remand a juvenile to the superior court for further proceedings. The *Dillenburg* court, having found Dillenburg had been remanded to the superior court without a hearing, devised a remedy for the wrong inflicted. The court held, *inter alia,* that if the juvenile had reached the age of 18 he would be granted a new hearing in the superior court on the propriety of the declination order. If, following the new hearing, the superior court determined the original declination order should not have been entered, then defendant should be granted a new trial. This was so notwithstanding Dillenburg himself when tried as an adult had pleaded guilty.

This court subsequently applied *Dillenburg* retroactively without additional and independent examination of the subject of retroactivity. *State v. Williams,* 75 Wn.2d 604, 453 P.2d 418 (1969); *State v. Piche,* 74 Wn.2d 9, 442 P.2d 632 (1968); *Williams v. Rhay,* 73 Wn.2d 770, 440 P.2d 427 (1968); *Sheppard v. Rhay,* 73 Wn.2d 734, 440 P.2d 422 (1968). In each case county juvenile courts originally waived jurisdiction without a decline hearing.

In 1970 this court decided *Brumley v. Charles R. Denney Juvenile Center,* 77 Wn.2d 702, 466 P.2d 481 (1970). The court relied on *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967), to uphold a juvenile's constitutional right to counsel in a hearing to determine if the juvenile was delinquent. Such counsel could be privately retained or if he was without funds the court would appoint one for him. *Gault* relied on the rationale of *Kent.*

The *Brumley* court held the right to counsel was not retroactive both on the basis of decisional law outside this state holding *Gault* to be prospective only and on the basis of reason. The court considered three factors pertinent: (1) The need to obtain a fair and judicious examination of whether the defendant was guilty of being a delinquent and whether retroactive application would carry out this objective, (2) whether reliance upon pre–*Gault* procedures by law enforcement prosecutors and the courts was justifiable, and (3) whether retroactive application would have serious

consequences upon the administration of justice, in that many who had been convicted by the use of pre–*Gault* procedures would now seek to upset their convictions. *See also Stovall v. Denno,* 388 U.S. 293, 296–98, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967). The *Brumley* court concluded from a consideration of these factors that *Gault* should have prospective operation only.

*Dillenburg,* decided before *Gault,* cited and relied on RCW 13.04.120 and *Kent* in requiring a decline hearing. The literal language of the statute prior to *Dillenburg* apparently had not been interpreted to require a decline hearing. *Kent,* using due process rationale, mandated a hearing and *Dillenburg* so held. *Dillenburg* involved a declination hearing and unlike *Gault,* did not involve the question of guilt or innocence of a delinquency charge. In a declination hearing, the court had power to retain jurisdiction regardless of the juvenile's guilt or innocence, provided the court determined it was in the best interests of the juvenile and society so to do. Nevertheless, the rationale of *Kent* and *Gault* was similar.

The overwhelming majority of decisions hold that neither *Gault* nor *Kent* are to be applied retroactively. These include *Brumley v. Juvenile Court, supra,* which cites cases involving *Gault* retroactivity and at least the following cases which involve *Kent* retroactivity. *Harris v. Procunier,* 498 F.2d 576 (9th Cir. 1974); *Mordecai v. United States,* 421 F.2d 1133 (D.C. Cir. 1969); *United States v. Wilkerson,* 262 F. Supp. 596 (D.C. 1967); *Eyman v. Superior Court,* 9 Ariz. App. 6, 448 P.2d 878 (1969); *Smith v. Commonwealth,* 412 S.W.2d 256 (Ky. 1967); *Bouge v. Reed,* 254 Ore. 418, 459 P.2d 869, 871 (1969).

These cases emphasize or illustrate the unrealistic character of the remedy devised after a defendant is too old to be subject to juvenile court jurisdiction and thus not able to obtain the rehabilitative procedures of the juvenile court—the case here. In *Bouge v. Reed, supra* at 422, the court said:

If the rule of *Kent* were applied retroactively . . . [there could be] no satisfactory alternative for the disposition of the case. Theoretically we could refer this case back to some court to hold a hearing to determine whether in 1963 it was in the best interest of the petitioner and the public that petitioner be remanded or that juvenile court jurisdiction be retained. This was what a majority of the Washington court decided was the appropriate disposition in *Dillenburg v. Maxwell,* 70 Wash2d 331, 413 P2d 940, 422 P2d 783, cert den 386 US 998, 87 S Ct 1320, 18 L Ed2d 348 (1967). In our view, however, this is not realistic.

Cases such as *Harris v. Procunier, supra,* and *Mordecai v. United States, supra,* apply the same criteria for retroactivity used in *Stovall v. Denno, supra,* and *Brumley v. Charles R. Denney Juvenile Center, supra.* They conclude *Kent* should not be applied retroactively. In *In re Harris,* 67 Cal. 2d 876, 879, 434 P.2d 615, 64 Cal. Rptr. 319 (1967), the court held *"Kent* does not apply to cases in which the judgment became final prior to May 15, 1967, the date of the decision in *Gault."*

We apply the foregoing principles to this case. We assume arguendo (1) law enforcement personnel and the courts in good faith relied upon the pre–*Gault* and pre–*Kent* rationales and procedures and (2) 11 years after *Dillenburg,* there may be no remaining pre–*Dillenburg* declination of jurisdiction orders in this state to be invalidated. The controlling question on retroactivity concerns the significance of the unavailability of juvenile court correctional rehabilitative measures because defendant is. too old to be subject to juvenile court jurisdiction. It must be remembered the availability of such rehabilitative measures is a factor relevant to whether the juvenile court should decline jurisdiction. *Kent v. United States, supra* at 567 (factor 8). *See In re Burtts,* 12 Wn. App. 564, 530 P.2d 709 (1976). In refusing to apply *Gault's* right to counsel on a retroactive basis, the *Brumley* court stated at page 708, that retroactivity "would add little to the social and psychological attitude of the individual involved nor presently

contribute in any measurable degree to the philosophy giving rise to the Gault rule." The same thing may be said of the *Kent* rule. *See Bouge v. Reed, supra.*

In the instant case, the juvenile court erred in declining jurisdiction and remanding McRae to the superior court without a hearing notwithstanding RCW 13.04.120 before *Dillenburg* and *Kent* were decided. *Dillenburg* made it clear the decision in *Kent* was decisive. *Dillenburg's* rationale meant the decision in *Kent* buttressed the conclusion the McRae decline order was erroneous. McRae could have attacked the decline order following *Dillenburg* but he waited over 11 years to pursue his attack upon the decline order when he filed his application for post–conviction relief. However, when he filed that application, the juvenile court had lost jurisdiction to give him the benefit of the rehabilitative measures he would have received so long as he was a juvenile. Whether those measures would have been beneficial or successful in accomplishing rehabilitation is at least speculative. Certainly McRae's history following the declination order, including the events which caused the revocation of his deferred sentence, suggest that McRae might not have benefited particularly from the use of those measures during the remaining time the juvenile court had jurisdiction over him.

Meanwhile in that 11–year period the difficulties of proof may well have increased. Whether witnesses and evidence when McRae pleaded guilty to the grand larceny charge of car theft are still available we do not know. If not available, McRae, notwithstanding he pleaded guilty to the charge, may not be tried or if tried will probably be acquitted for want of proof. On the other hand, if the evidence is available, the likelihood that he will be acquitted of the charge to which he pleaded guilty seems insubstantial. Under the first alternative, an admittedly guilty defendant will escape conviction; under the second a new trial will not change the conviction adjudged more than 11 years ago. The *Dillenburg* remedy of a new trial in the instant case seems

inappropriate or to use the language of *Bouge v. Reed, supra,* "not realistic."

*Mordecai v. United States, supra* at 1138, in emphasizing what it considered the controlling factor in refusing to hold *Kent* retroactive said:

> In evaluating the effect on the administration of justice of a decision to apply *Kent* retroactively, however, we must consider not only the number of waivers affected, but the availability of an adequate remedy at this late date for those improperly waived. We find the latter consideration decisive in this case. When a new trial is required by the retroactive application of a new standard, both the individual and the state may be handicapped by the disappearance of witnesses and other evidence over time. Often these difficulties must be faced. But their magnitude is a valid consideration in determining whether to make a decision retroactive.

The fact that a remedy for the wrong claimed is no longer efficacious is relevant in determining whether a writ of habeas corpus should be granted.

If *Dillenburg* is not applied retroactively, denial of McRae's petition for post–conviction relief in the nature of an application for habeas corpus is required. We hold against a retroactive application whether (1) we apply RCW 13.04.120 alone or in light of the due process rationale of *Kent* or (2) whether we hold the *Brumley* rationale and additional decisional law so undermines the basis for continuing to hold *Dillenburg* retroactive as to require us to hold against retroactivity.

Denied.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and DOLLIVER, JJ., concur.