

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 1 6 2018

_Fairhurst, CJ_
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on 8/16/18

_____, Deputy

for SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 94973-5 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| TYLER WILLIAM WATKINS, | ) | |
| | ) | Filed: AUG 1 6 2018 |
| Appellant. | ) | |
| | ) | |

FAIRHURST, C.J.—Sixteen year old Tyler William Watkins was charged with first degree burglary in adult court pursuant to former RCW 13.04.030(1) (2009), *amended by* Laws of 2018, chapter 162, section 1.[1] Former RCW 13.04.030(1) (2009), part of the Basic Juvenile Court Act (BJCA), provided that juvenile courts must automatically decline jurisdiction over 16 and 17 year olds

---

[1] The 2018 amendment to RCW 13.04.030(1)(e)(v)(D) removed first degree burglary and several other crimes from the list of enumerated offenses that would automatically subject a juvenile offender to adult court jurisdiction. The amendment did not moot the constitutional issue presented in this case because this amendment does not apply retroactively and because the amendment did not remove the automatic decline component of former RCW 13.04.030(1) (2009). The amendment narrowed the scope of juvenile offenders who would be charged automatically in adult court but still requires juvenile courts to automatically decline jurisdiction over juveniles charged with certain violent offenses. The amendment has no bearing on our resolution of this constitutional issue.

charged with enumerated offenses. Watkins argues that his due process rights were violated because the automatic decline component of former RCW 13.04.030(1) (2009) applied without him first having a hearing on whether the juvenile court should retain jurisdiction. As we previously did in *In re Boot*, 130 Wn.2d 553, 925 P.2d 964 (1996) (upholding former RCW 13.04.030(1) (1994) against substantive and procedural due process challenges), we again hold that automatic decline does not violate due process because juveniles do not have a constitutional right to be tried in juvenile court. We affirm the conviction.

## I. FACTS AND PROCEDURAL HISTORY

Watkins was charged with one count of first degree burglary based on information that he and his younger brother broke into the victim's home and stole nine firearms when the victim was gone. Watkins' fingerprints matched those found at the scene of the crime, and a search of Watkins' home revealed three of the nine firearms that were stolen in the burglary.

Watkins was 16 years old at the time he was charged and he had a prior felony conviction for theft of a firearm. The information was filed in superior court pursuant to former RCW 13.04.030(1)(e)(v)(D) (2009), which required the juvenile court to automatically decline jurisdiction over a 16 or 17 year old with a prior felony conviction who was subsequently charged with first degree burglary. Before trial, Watkins filed a motion objecting to automatic transfer of his case to

superior court, arguing that automatic decline violates federal due process; the Eighth Amendment to the United States Constitution; and article I, section 14 of the Washington Constitution (prohibiting cruel punishment). The trial court denied the motion on the basis that it was bound by this court's determination in *Boot*, 130 Wn.2d at 557-58.

Watkins stipulated to a bench trial on agreed documentary evidence and was found guilty as charged. Accepting the parties' recommendation, the trial court sentenced Watkins to 16 months in prison and 18 months on community supervision. Watkins appealed, and we granted direct review.

## II. ISSUES

A.    Does a juvenile court's automatic declination of jurisdiction under former RCW 13.04.030(1) (2009) violate a juvenile defendant's procedural or substantive due process rights?

B.    Has *Boot*'s substantive due process holding been abrogated by subsequent decisions of this court or the United States Supreme Court?

## III. STANDARD OF REVIEW

The constitutionality of a statute is reviewed de novo. *State v. Jorgenson*, 179 Wn.2d 145, 150, 312 P.3d 960 (2013). The party challenging the constitutionality of a statute bears the burden of proving the statute is unconstitutional beyond a reasonable doubt. *State v. Leatherman*, 100 Wn. App.

318, 321, 997 P.2d 929 (2000). If possible, the court will construe a statute so as to render it constitutional. *Jorgenson*, 179 Wn.2d at 150.

## IV. ANALYSIS

Watkins contends that former RCW 13.04.030(1) (2009) is unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution.[2] Specifically, Watkins argues that automatic decline violates procedural due process by depriving him of his right to a hearing[3] in juvenile court.[4] He also argues that automatic decline violates substantive due process by depriving him of his right to be punished in accordance with his level of culpability. Watkins and amici (Juvenile Law Center, American Civil Liberties Union of Washington, and others) make numerous policy arguments in favor of prosecuting all juveniles in juvenile

---

[2] Watkins does not invoke the due process protections of the Washington Constitution.

[3] This hearing is sometimes referred to as a "*Kent* hearing" because of the United States Supreme Court's decision in *Kent v. United States*, 383 U.S. 541, 566-67, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966), which laid out the relevant factors a juvenile court must consider before exercising its discretion to assign adult court jurisdiction. *See, e.g., United States v. Bland*, 153 U.S. App. D.C. 254, 472 F.2d 1329, 1344 n.8 (1972) (Wright, J., dissenting) (using the term "*Kent* hearing").

[4] Watkins attempts to bolster his argument by pointing out that several other states have banned automatic decline statutes, including Delaware, Nevada, Missouri, and Hawaii. *Hughes v. State*, 653 A.2d 241, 252 (Del. 1994) (Fourteenth Amendment and state constitution); *In re William M.*, 124 Nev. 1150, 1152, 196 P.3d 456 (2008) (Fifth Amendment right against self-incrimination); MO. REV. STAT. § 211.031; HAW. REV. STAT. § 571-22. However, some of these states removed automatic decline procedures by statutory amendment. Only the Delaware Supreme Court case actually supports Watkins' argument that the federal constitution provides the right to a *Kent* hearing. *Hughes*, 653 A.2d 241. The statute in *Hughes* automatically transferred juvenile felony cases to adult court if the juvenile turned 18 before the date of adjudication. *Id.* at 247. Concerned that prosecutors could strategically delay the adjudication of 17 year olds in order to subject them to adult court jurisdiction, the court said that juveniles had a constitutional right to a hearing that would consider "the nature of the *offense* rather than the nature of the *charge.*" *Id.* at 251. Here, former RCW 13.04.030(1) (2009) took into consideration

- 4 -

court[5] but fail to show that a *Kent* hearing in juvenile court is required by the United States Constitution under this particular statutory scheme. *See Kent v. United States,* 383 U.S. 541, 557, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966). The Washington State Legislature created our juvenile court system and therefore has the power to define its jurisdiction. RCW 13.04.021. There is no constitutional right to be tried in juvenile court and, hence, no constitutional right to a *Kent* hearing before being tried in adult court. *Boot,* 130 Wn.2d at 569-72.

Watkins also contends that this court's decision in *Boot,* which upheld the constitutionality of former RCW 13.04.030(1) (1994) against due process, Eighth Amendment, and equal protection challenges, has been abrogated by Eighth Amendment decisions of both this court and the United States Supreme Court. However, *Boot*'s reasoning is sound, and its due process holdings have not been undermined by subsequent Eighth Amendment decisions. Automatic decline does not implicate the Eighth Amendment's prohibition on cruel and unusual

---

both the nature of the offense and the nature of the charge. Thus, the persuasive value of *Hughes* is severely limited.

[5] Watkins and amici argue, among other things, that juveniles transferred to the adult system "reoffend more quickly and are more likely to engage in violent crimes after release than youths processed in the juvenile justice system." Jason J. Washburn, et al., *Psychiatric Disorders among Detained Youths: A Comparison of Youths Processed in Juvenile Court and Adult Criminal Court,* 59 PSYCHIATRIC SERVS. 965, 972 (2008). They also argue that juveniles are less likely to receive age-appropriate treatment and education in adult facilities because adult corrections personnel lack the specialized training needed to treat juveniles' mental health issues. CAMPAIGN FOR YOUTH JUSTICE, THE CONSEQUENCES AREN'T MINOR: THE IMPACT OF TRYING YOUTH AS ADULTS AND STRATEGIES FOR REFORM 7 (2007), http://www.justicepolicy .org/research/1965 [https://perma.cc./ZT9A-A26R].

punishment because adult courts have discretion to depart from standard sentence ranges to avoid excessive punishment of juveniles. *See State v. Houston-Sconiers*, 188 Wn.2d 1, 21, 391 P.3d 409 (2017).[6]

A.   Former RCW 13.04.030(1) (2009) does not deprive Watkins of any due process right because there is no constitutional right to be tried in juvenile court

Watkins contends that due process requires a *Kent* hearing before a juvenile court may decline jurisdiction over a juvenile charged with one of the offenses enumerated in former RCW 13.04.030(1) (2009). Juveniles charged with crimes have a right to procedural due process. *In re Gault*, 387 U.S. 1, 30-31, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). Due process "'is not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162-63, 71 S. Ct. 624, 95 L. Ed. 817

---

[6] Watkins also argues that if the juvenile court had held a hearing to determine whether to assign juvenile or adult court jurisdiction, the juvenile court would have assigned juvenile court jurisdiction. However, this argument has no bearing on the constitutionality of former RCW 13.04.030(1) (2009), and this court lacks a record sufficient to determine the outcome of a *Kent* hearing. Therefore, we do not reach this issue.

(1951) (Frankfurter, J., concurring)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Compliance with procedural due process requires the court to identify the private interest affected by the official action, the risk of erroneous deprivation, the probable value of additional safeguards, and the State's interests. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

"'[T]here is no constitutional right to be tried in a juvenile court.'" *Boot*, 130 Wn.2d at 571 (alteration in original) (quoting *State v. Dixon*, 114 Wn.2d 857, 860, 792 P.2d 137 (1990)); *State v. Maynard*, 183 Wn.2d 253, 259, 351 P.3d 159 (2015); *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 783 n.8, 100 P.3d 279 (2004); *State v. Oreiro*, 73 Wn. App. 868, 873, 871 P.2d 666 (1994); *State v. Sandomingo*, 39 Wn. App. 709, 711, 695 P.2d 592 (1985); *State v. Sharon*, 33 Wn. App. 491, 494, 655 P.2d 1193 (1982) *aff'd*, 100 Wn.2d 230, 668 P.2d 584 (1983); *State v. Hodges*, 28 Wn. App. 902, 904, 626 P.2d 1025 (1981). And "the right [to a *Kent* hearing] attaches only if a court is given statutory discretion to assign juvenile or adult court jurisdiction." *State v. Salavea*, 151 Wn.2d 133, 140, 86 P.3d 125 (2004); *Boot*, 130 Wn.2d at 570.

The Washington State Legislature created the juvenile court system by enacting the BJCA. RCW 13.04.021. The BJCA provides that the juvenile court

shall have exclusive original jurisdiction over all proceedings relating to juvenile offenses—but requires the juvenile court to automatically decline jurisdiction over 16 and 17 year olds charged with an enumerated offense.[7] RCW 13.04.030(1)(e)(v). Only an adult court may preside over such proceedings. *Id.* We upheld the constitutionality of automatic decline in *Boot.* 130 Wn.2d at 557-58.[8] This court will reject its prior holdings only on a clear showing that an established rule is incorrect and harmful. *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016).

In *Boot*, two 16 year old juvenile defendants were charged with violent crimes and prosecuted in adult criminal court pursuant to former RCW 13.04.030(1)(e) (1994). 130 Wn.2d at 558-60. Defendants challenged the constitutionality of automatic decline under a variety of different theories,

---

[7] Former RCW 13.04.030 (2009) provides, in pertinent part:
(1) Except as provided in this section, the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings:

. . . .

(e) Relating to juveniles alleged or found to have committed offenses, traffic or civil infractions, or violations as provided in RCW 13.40.020 through 13.40.230, unless:

. . . .

(v) The juvenile is sixteen or seventeen years old on the date the alleged offense is committed and the alleged offense is:

. . . .

(D) Burglary in the first degree committed on or after July 1, 1997, and the juvenile has a criminal history consisting of one or more prior felony or misdemeanor offenses.

[8] The D.C. Circuit upheld a similar statute against a due process challenge in *Bland*, 472 F.2d at 1335-36 (holding that a statute requiring 16 and 17 year old juveniles charged with a felony offense to be charged in adult court does not violate due process).

including that it violated the defendants' due process rights and the Eighth Amendment. *Id.* at 569-72. With regard to the procedural due process challenge, this court held that there is no constitutional right to be tried in a juvenile court and the statute does not deprive the defendants "of any constitutionally protected right merely by conferring adult criminal court jurisdiction over them without a hearing." *Id.* at 571. This court held that automatic decline did not violate substantive due process because it did not deprive juveniles of their right to be punished in accordance with their degree of culpability. *Id.* at 572. Regarding the Eighth Amendment challenge, we held that vesting adult court jurisdiction over a juvenile without a hearing does not violate the Eighth Amendment because adult court jurisdiction is not punishment in and of itself. *Id.* at 569. "The Eighth Amendment question will not ordinarily be ripe for adjudication until [the defendants] are actually sentenced." *Id.*

Watkins argues that the Supreme Court's holding in *Kent*, which was decided 30 years before *Boot*, is inconsistent with automatic decline and establishes a constitutional right to a hearing before a juvenile is tried in adult court. In *Kent*, 16 year old Morris Kent was arrested after a home invasion, rape, and robbery. 383 U.S. at 543. He was charged in juvenile court under a statute requiring that juvenile courts have exclusive jurisdiction over juvenile offenders. *Id.* at 546. The statute allowed the juvenile court to transfer jurisdiction to adult

court after compliance with procedural safeguards and a full investigation into the facts of the case. *Id.* at 546 n.4, 565-68. Kent's lawyer moved for a full investigation under the statute, but the juvenile court ignored the motion and transferred Kent's case to adult court without an investigation or hearing. *Id.* at 546.

The Supreme Court held that the trial court's failure to follow the statutory procedures, state the reasons for transfer, and hold a hearing required reversal of the juvenile court's order. *Id.* at 557-63. "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons." *Id.* at 554.

Careful consideration of the statutory framework underlying the *Kent* decision suggests that *Kent*'s holding is limited to circumstances where a juvenile court has statutory discretion to retain or transfer jurisdiction.[9] The statute in *Kent* provided the juvenile court with jurisdiction over all juvenile proceedings and the discretion to waive jurisdiction over a particular class of juvenile defendants.[10] In

---

[9] The Supreme Court discussed automatic adult court statutes in a recent decision and made no indication that the statutes are unconstitutional:

> [M]any States use mandatory transfer systems: A juvenile of a certain age who has committed a specific offense will be tried in adult court, regardless of any individualized circumstances. Of the 29 relevant jurisdictions, about half place at least some juvenile homicide offenders in adult court automatically, with no apparent opportunity to seek transfer to juvenile court.

*Miller v. Alabama*, 567 U.S. 460, 487, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[10] The statute in *Kent* provided:

contrast, former RCW 13.04.030(1) (2009) precludes our juvenile courts from presiding over a particular class of juveniles. *Kent*'s hearing requirement makes sense in the context of the D.C. statute because the juvenile court was vested with discretion to make a jurisdictional decision. But a hearing requirement would be absurd under Washington law because our juvenile court is statutorily precluded from presiding over this type of case. *Boot*, 130 Wn.2d at 563 ("The statute does not contemplate declination hearings, and they would serve no purpose in light of the legislative decision to vest exclusive original jurisdiction in the adult criminal court."). Thus, *Kent*'s holding must be limited to circumstances where a juvenile court has statutory authority to hear a particular case. Because *Kent* is distinguishable on statutory grounds, its holding has no bearing on the constitutionality of former RCW 13.04.030(1) (2009).

Resolving the procedural due process issue requires analysis of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional safeguards; and (3) the government's interest,

---

"'If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this subchapter in conducting and disposing of such cases.'"

383 U.S. at 547-48 (quoting former D.C. CODE § 11-914 (1947)).

including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews*, 424 U.S. at 335-36.

Regarding the private interest factor, Watkins has a reasonable interest in remaining in juvenile court because juvenile court carries with it the potential for lighter punishment. RCW 13.40.300. However, Watkins does not have a constitutional right to be tried in juvenile court. *See, e.g.*, *Dixon*, 114 Wn.2d at 860. Regarding the erroneous deprivation factor, the risk that automatic decline will erroneously deprive Watkins of his interest in juvenile court is low because there is no *discretion* involved in the declination of jurisdiction—Watkins was either charged with an enumerated offense or he was not. Former RCW 13.04.030(1) (2009). The only discretion involved in the automatic decline process lies in the hands of the prosecutor, who will sometimes have the discretion to charge a defendant with an enumerated offense triggering automatic decline. These charging decisions are unlikely to *erroneously* deprive Watkins of his interest in juvenile court because criminal charges must be supported by probable cause. *State v. Rice*, 174 Wn.2d 884, 889, 279 P.3d 849 (2012) ("[T]he legislature checks prosecutors . . . by defining the particular acts and circumstances that may warrant criminal punishment . . . and the judiciary checks . . . prosecutors by reviewing probable cause.").

A *Kent* hearing has no value as an additional safeguard here because, regardless of the outcome of a *Kent* hearing, the juvenile court cannot exercise jurisdiction over Watkins' case. Former RCW 13.04.030(1)(e)(v)(D) (2009). Thus, Watkins' argument that due process requires a *Kent* hearing in juvenile court is unconvincing. *Boot*, 130 Wn.2d at 571; *Salavea*, 151 Wn.2d at 140 ("[T]he right [to a *Kent* hearing] attaches only if a court is given statutory discretion to assign juvenile or adult court jurisdiction.").

With regard to the government interest factor, the State has a legitimate interest in deterring violent crime, and this interest is furthered by the threat of harsher punishment in the adult system. Requiring a court to conduct a *Kent* hearing under these circumstances would place an unnecessary burden on judicial resources because the juvenile court is statutorily precluded from hearing this case. Former RCW 13.04.030(1) (2009). Having weighed the *Mathews* factors, we hold that automatic decline comports with procedural due process.

Watkins' argument that automatic decline violates substantive due process because it deprives him of his right to be sentenced in accordance with his culpability is also unconvincing. Under *Houston-Sconiers*, adult courts have discretion to consider the mitigating qualities of youth and sentence below the standard range in accordance with a defendant's culpability. 188 Wn.2d at 21. The

automatic decline component of former RCW 13.04.030(1) (2009) does not violate substantive due process.

B. The substantive due process holding in *Boot* has not been abrogated by subsequent decisions of this court or the United States Supreme Court

Watkins argues that our holding in *Boot* regarding substantive due process has been abrogated by this court's holding in *Houston-Sconiers* and several Supreme Court cases: *Miller v. Alabama*, 567 U.S. 460, 479, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (holding that the Eighth Amendment requires individualized sentencing for juveniles convicted of murder facing a potential sentence of life without parole); *Roper v. Simmons*, 543 U.S. 551, 569-75, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (holding that the Eighth Amendment precludes the death penalty for juveniles); *Graham v. Florida*, 560 U.S. 48, 62, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (holding that the Eighth Amendment precludes life imprisonment without parole for a juvenile who did not commit homicide); *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011) (holding that youth is a relevant factor in assessing whether a reasonable person would believe he or she is in custody under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). With the exception of *J.D.B.*, each of these cases was decided on Eighth Amendment grounds and prohibits juveniles from receiving the

harshest sentences—death, mandatory life without parole, and life without parole for a nonhomicide offense.[11]

This line of cases emphasized the principle that juveniles are developmentally different from adults and that these differences are relevant to juvenile defendants' constitutional rights. This principle is supported by a substantial body of developmental research and neuroscience demonstrating significant psychological differences between juveniles and adults. *See, e.g., Graham*, 560 U.S. at 68 ("developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"). Specifically, research shows that "'children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking.'" *Montgomery v. Louisiana*, ___ U.S.___, 136 S. Ct. 718, 733, 193 L. Ed. 2d 599 (2016) (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 471).

---

[11] In *J.D.B.*, the Supreme Court held that a juvenile's age properly informs the *Miranda* custody analysis if the officer knew or should have known the juvenile's age. *J.D.B.*, 564 U.S. at 271-72. "We have observed that children 'generally are less mature and responsible than adults,' [and] that they 'often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them.'" *Id.* at 272 (citations omitted) (quoting *Belotti v. Baird*, 443 U.S. 622, 635, 99 S. Ct. 3035, 61 L. Ed. 2d 797 (1979) (plurality opinion)). "Addressing the specific context of police interrogation, we have observed that events that 'would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens.'" *Id.* (quoting *Haley v. Ohio*, 332 U.S. 596, 599, 68 S. Ct. 302, 92 L. Ed. 224 (1948) (plurality opinion)). The Court's holding in *J.D.B.* indicates that the principle of treating youthful defendants differently than adults is properly applied in the due process context where a youthful defendant's subjective mental state is a critical part of the constitutional analysis. Resolving the question of whether former RCW 13.04.030(1) (2009) is constitutional does not require us to analyze the subjective mental state of a youthful defendant. Therefore, *J.D.B.* does not guide our resolution of this issue.

Juveniles are also highly susceptible to "'negative influences and outside pressures,'" and have limited "'contro[l] over their own environment.'" *Miller*, 567 U.S. at 471 (alteration in original) (quoting *Roper*, 543 U.S. at 569). Youthful offenders have a greater capacity for rehabilitation than adults because a child's character is "'not as well formed'" as an adult's and "'a greater possibility exists that a minor's character deficiencies will be reformed.'" *Graham*, 560 U.S. at 68 (quoting *Roper*, 543 U.S. at 569-70). The Supreme Court has held that these developmental characteristics indicate that youthful defendants are generally less culpable than their adult counterparts. *Roper*, 543 U.S. at 570. It follows naturally that any constitutional analysis weighing the culpability or decision-making skills of a youthful defendant should take youthfulness into account.

We addressed the diminished culpability of youthful defendants in *Houston-Sconiers*, where we held that the Eighth Amendment gives trial courts discretion to sentence juveniles below the standard sentencing range because "children are different." 188 Wn.2d at 9. In that case, two juvenile offenders, ages 16 and 17, were charged with a host of crimes relating to a Halloween robbery that brought them automatically into adult court under former RCW 13.04.030(1)(e)(v)(C) (2009). The trial court noted that it had no discretion to sentence the juveniles below the standard range and sentenced them to 312 and 372 months, respectively. *Id.* at 12-13. The defendants appealed, and the Court of Appeals reversed. *Id.* at 13.

In accordance with *Miller*, we held that "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system, regardless of whether the juvenile is there following a decline hearing or not." *Id.* at 21. We affirmed the Court of Appeals and explained that "[t]rial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable [Sentencing Reform Act of 1981, chapter 9.94A RCW,] range and/or sentence enhancements." *Id.* We declined to address the validity of automatic decline under former RCW 13.04.030(1) (2009). *Id.* at 27 n.11.

Our reasoning in *Houston-Sconiers* affirms rather than undermines our holding in *Boot*. *Houston-Sconiers* and *Miller* were concerned with the "choice between extremes" that judges face when determining whether to assign juvenile or adult court jurisdiction. *Miller*, 567 U.S. at 488. But Washington no longer faces a choice between extremes because this court declared in *Houston-Sconiers* that trial courts have discretion to sentence juveniles below the applicable sentencing range in accordance with their culpability. 188 Wn.2d at 21; *see State v. O'Dell*, 183 Wn.2d 680, 689, 358 P.3d 359 (2015) (holding that adult courts may also consider the youthful nature of young *adults* as a mitigating factor at sentencing). Put simply, automatic decline does not violate a juvenile defendant's substantive

due process right to be punished in accordance with his or her culpability because adult courts can take into account the "mitigating qualities of youth at sentencing." *Houston-Sconiers*, 188 Wn.2d at 21.

Watkins contends that *Houston-Sconiers*, *Miller*, *Roper*, and *Graham* require more than simply taking into account a defendant's youthfulness at sentencing—he argues that they establish a *substantive due process* right to a *Kent* hearing before being transferred to adult court. This argument lacks merit. The principle that juveniles are developmentally different from adults factors into a court's decision regarding a youthful defendant's culpability, like in *Roper*, *Miller*, and *Graham*, or a youthful defendant's subjective mental state, like in *J.D.B.* That principle does not factor into our determination of whether a jurisdictional statute like former RCW 13.04.030 (2009) is constitutional because resolving this issue does not require us to assess a youthful defendant's culpability or subjective mental state. To resolve this issue we need decide only whether the legislature has the authority to define the scope of juvenile court jurisdiction. The answer is yes—the legislature can define the scope of juvenile court jurisdiction because the legislature itself created the juvenile court system and there is no constitutional right to be tried in juvenile court. RCW 13.04.021; *Boot*, 130 Wn.2d at 571; *Maynard*, 183 Wn.2d at 259; *Dalluge*, 152 Wn.2d at 783 n.8; *Oreiro*, 73 Wn. App.

at 873; *Sandomingo*, 39 Wn. App. at 711; *Sharon*, 33 Wn. App. at 494; *Hodges*, 28 Wn. App. at 904.

## V. CONCLUSION

This court already considered the constitutionality of former RCW 13.04.030(1) (1994) in *Boot* and held that automatic decline did not violate due process. 130 Wn.2d at 571-72. The reasoning in *Boot* is sound and has not been undermined by subsequent decisions of this court or the Supreme Court. We therefore affirm the trial court's ruling that the automatic decline component of former RCW 13.04.030(1) (2009) does not violate due process.

*State v. Watkins*, No. 94973-5

Fairhurst, C.J.

WE CONCUR:

_____
Madsen, J.

Wiggins, J.
_____

_____

_____
Owens, J.

_____

_____
Stephens, J.

_____

- 20 -

No. 94973-5

YU, J. (dissenting) — This case presents the opportunity to take a fresh look

at Washington's auto-decline statute, former RCW 13.04.030(1) (2009), which

*requires* certain accused juvenile offenders be removed from our juvenile court's

jurisdiction without the exercise of any judicial discretion or consideration of the

offender's individual circumstances.[1] In light of what we know and embrace

regarding adolescent behavior, I would hold that before a juvenile is transferred to

adult court there must be a hearing where a juvenile court judge considers whether

proceeding in adult court is appropriate in the particular juvenile's case.

Therefore, I respectfully dissent.

---

[1] "Decline" is a misnomer because it implies that juvenile court had jurisdiction over the youth and then chose not to exercise it. In fact, an auto-decline statute entirely strips juvenile court of its jurisdiction over the youth; there is no jurisdiction to *decline*.

1

ANALYSIS

Juvenile courts are divisions of the superior courts, created by statute, and a feature of Washington law since early statehood. RCW 13.04.021(1); *State v. S.J.C.*, 183 Wn.2d 408, 415, 352 P.3d 749 (2015). Whereas adult courts are punitive by design, juvenile courts aim to both rehabilitate youth and hold them accountable in a manner that is consistent with their developmental stage. *S.J.C.*, 183 Wn.2d at 422. Reflecting their differing purposes, juvenile courts afford youth rights, processes, and services that are not available in adult courts.

The current statutory scheme dictates which accused juvenile offenders have the right to be charged in juvenile court and which must automatically be declined to adult court based on their age and the charges.[2] RCW 13.04.030. While we upheld the constitutionality of auto-decline in *In re Boot*, 130 Wn.2d 553, 571, 925 P.2d 964 (1996), this case presents the opportunity to revisit that holding.

It is well established that when a statute provides juvenile courts with discretion to transfer a juvenile to adult court, this "critically important" determination cannot be made without an opportunity for a hearing. *Kent v. United*

---

[2] Pursuant to former RCW 13.04.030(1)(e)(v) (2009), a juvenile offender who is at least 16 years old on the date of the alleged offense is automatically excluded from juvenile court for certain alleged offenses. It is undisputed that in this case Tyler William Watkins was at least 16 years old on the date of the offense, and he was charged with one count of burglary in the first degree. Therefore, pursuant to RCW 13.04.030(1)(e)(v)(D), the superior court had exclusive original jurisdiction and Watkins had no statutory right to be tried in juvenile court.

2

*States*, 383 U.S. 541, 556, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966); *State v. Salavea*, 151 Wn.2d 133, 140, 86 P.3d 125 (2004). At the hearing, a juvenile court judge considers factors such as the seriousness of the alleged offense, the juvenile's prior record, home life, and maturity. *Kent*, 383 U.S. at 566-67; *State v. Williams*, 75 Wn.2d 604, 606-07, 453 P.2d 418 (1969), *overruled in part on other grounds by McRae v. State*, 88 Wn.2d 307, 559 P.2d 563 (1977). In *Boot*, we held that no such hearing is required when the statute mandates certain classes of accused juvenile offenders be automatically declined to adult court without the opportunity for the exercise of judicial discretion. 130 Wn.2d at 571. I believe it is time to overrule *Boot* because its substantive due process analysis rests on an assumption we now know to be false in light of new evidence and its application is incorrect and harmful.

The court in *Boot* relied on the prevailing assumption at the time that juveniles are not categorically less culpable than adults except when the death penalty is imposed. *Id.* at 571-72. Case law from the United States Supreme Court and this court provided legal support for the court's conclusion. *Id.* (citing to *Stanford v. Kentucky*, 492 U.S. 361, 109 S. Ct. 2969, 106 L. Ed. 2d 306 (1989), *overruled by Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), to support the proposition juveniles are not categorically less culpable than adults). And because the juveniles in *Boot* had not been sentenced to death, the

3

court adhered to precedent and held the juveniles' substantive due process challenge failed and they had no right to be heard in juvenile court.

Our understanding of juvenile culpability has changed dramatically over the last 20 years. We now recognize that "'parts of the brain involved in behavior control' continue to develop well into a person's 20s," and so juveniles differ from adults in their "risk and consequence assessment, impulse control, tendency toward antisocial behaviors, and [their] susceptibility to peer pressure." *State v. O'Dell*, 183 Wn.2d 680, 691-92, 358 P.3d 359 (2015) (footnotes and internal quotation marks omitted) (quoting *Miller v. Alabama*, 567 U.S. 460, 472, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)).

This new knowledge has resulted in a marked shift in the way we treat accused juvenile offenders. When asked whether juveniles should be treated differently than adults, both the United States Supreme Court and this court have consistently answered affirmatively and now "it is the odd legal rule that does *not* have some form of exception for children." *Miller*, 567 U.S. at 481. *J.D.B. v. North Carolina*, 564 U.S. 261, 265, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011) (a child's age is relevant in a *Miranda* custody analysis); *Miller*, 567 U.S. at 465 (mandatory juvenile life without parole violates the Eighth Amendment); *Graham v. Florida*, 560 U.S. 48, 82, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (juvenile life without parole for nonhomicide offenders violates the Eighth Amendment);

4

*Roper v. Simmons*, 543 U.S. at 578 (juvenile death penalty violates the Eighth Amendment); *State v. Houston-Sconiers*, 188 Wn.2d 1, 9, 391 P.3d 409 (2017) (superior courts have "absolute discretion" to depart from standard sentences when sentencing juveniles in adult court); *O'Dell*, 183 Wn.2d at 696 (adult courts may consider youth as a mitigating factor when imposing a sentence on a young adult); *S.J.C.*, 183 Wn.2d at 411 (article I, section 10 does not apply to statutory sealing of juvenile court records).

The legislature has also reconsidered its approach to juveniles since the unfounded fears of juvenile superpredators gripped the nation in the 1990s. Corrected Br. of Amici Curiae Creative Justice, Cmty. Passageways, & Glover Empower-Mentoring Program at 3-4. Recent policy decisions are in lockstep with recent judicial decisions and evidence an understanding that adolescent brain development must inform how juveniles are adjudicated. In 2018, the legislature amended the statute at issue in this case, RCW 13.04.030(1)(e)(v), and removed first degree burglary and other crimes from those that result in automatic decline of an accused juvenile offender. LAWS OF 2018, ch. 162, § 1. The legislature also took the extraordinary step of extending juvenile court jurisdiction to age 25, recognizing that a juvenile does not instantly mature into an adult at age 18 or even 21. *Id.* While the majority correctly notes that the constitutionality of the amended legislation is not properly before this court, the majority errs when it

5

dismisses it as "ha[ving] no bearing on our resolution" of this case. Majority at 1 n.1. I disagree. We should view the legislature's recent amendment as consistent with the growing body of law and science that affirms the fundamental principle that "children are different." *State v. Houston-Sconiers*, 188 Wn.2d 1, 18, 391 P.3d 409 (2017) (citing *Miller*, 567 U.S. at 481).

Despite how much has changed since *Boot*, the majority concludes that juvenile court jurisdiction is not necessary to protect the substantive due process rights of juveniles because adult courts have discretion to deviate from standard sentences. Majority at 17-18 (citing *Houston-Sconiers*, 188 Wn.2d at 21). But the burden of convincing the trial court to exercise that discretion in favor of the youthful offender lies with the juvenile. *State v. Ramos*, 187 Wn.2d 420, 445, 387 P.3d 650 (2017). And other burdens fall on the juvenile charged in adult court, including an adult conviction record, the lack of confidentiality, the emphasis on punishment over rehabilitation, and adult postsentencing conditions. Since those burdens remain, the substantive due process question remains. And *Boot*'s answer to that question—which relied on the assumption that juveniles are not categorically less culpable than adults—is incorrect.

I would resolve this case by applying the fundamental principle that children are different. As the Supreme Court explained in *Kent*, "[i]t would be extraordinary if society's special concern for children . . . permitted" a judge to

order a juvenile transferred to adult court without the opportunity for a hearing. 383 U.S. at 554. I agree. And I believe, taken as a whole, our precedent unmistakably supports applying this conclusion to *all* accused juvenile offenders. I am unwilling to accept the premise that it is constitutionally permissible to arbitrarily carve out certain classes of accused juvenile offenders and deprive them of the right or opportunity to be heard in juvenile court before being transferred to adult court. It creates an unacceptable risk that juveniles will be subjected to convictions, stigma, conditions, and punishments that are disproportionate to their crimes. I similarly do not believe that a decision "of such tremendous consequences" can rest solely on prosecutorial discretion because the reality is that political pressure may actually encourage prosecutors to transfer youth to adult court in order to seek harsher sentences available only in adult court. *Id.* at 554.

I would therefore reverse the trial court and hold that former RCW 13.04.030(1) is inconsistent with our case law and violates fundamental notions of due process. I would further hold that juveniles cannot be transferred to adult court without a hearing conducted by a juvenile court judge. The judge should consider the individual circumstances of the case, such as the juvenile's age, maturity, and offender history; the strength of the prosecutor's case; and the nature of the alleged offense, including whether it was violent and how many youth were involved.

7

CONCLUSION

It is the status of being a juvenile, and not the specific offending behavior at issue, that triggers differing protections for youth. Auto-decline statutes, however, require certain accused juvenile offenders to be treated as adults based on their alleged crimes, without any opportunity for a discretionary judicial determination that the particular juvenile at issue should, in fact, be treated as an adult. Juveniles have a right *not to be* automatically treated as adults. This requires a juvenile court to conduct a hearing at which it considers the individual juvenile who has been charged with a particular offense in order to determine whether adult criminal court is the right place for that person. I respectfully dissent.

_____
Yu, J.

Gonzáles, J.

González, J.