YU, J. (dissenting)
¶ 26 This case presents the opportunity to take a fresh look at Washington's auto-decline statute, former RCW 13.04.030(1) (2009), which requires certain accused juvenile offenders be removed from our juvenile court's jurisdiction without the exercise of any judicial discretion or consideration of the offender's individual circumstances.[1] In light of what we know and embrace regarding adolescent behavior, I would hold that before a juvenile is transferred to adult court there must be a hearing where a juvenile court judge considers whether proceeding in adult court is appropriate in the particular juvenile's case. Therefore, I respectfully dissent.
ANALYSIS
¶ 27 Juvenile courts are divisions of the superior courts, created by statute, and a feature of Washington law since early statehood. RCW 13.04.021(1) ; State v. S.J.C., 183 Wash.2d 408, 415, 352 P.3d 749 (2015). Whereas adult courts are punitive by design, juvenile courts aim to both rehabilitate youth and hold them accountable in a manner that is consistent with their developmental stage. S.J.C., 183 Wash.2d at 422, 352 P.3d 749. Reflecting their differing purposes, juvenile courts afford youth rights, processes, and services that are not available in adult courts.
¶ 28 The current statutory scheme dictates which accused juvenile offenders have the right to be charged in juvenile court and which must automatically be declined to adult court based on their age and the charges.[2] RCW 13.04.030. While we upheld the constitutionality of auto-decline in In re Boot, 130 Wash.2d 553, 571, 925 P.2d 964 (1996), this case presents the opportunity to revisit that holding.
¶ 29 It is well established that when a statute provides juvenile courts with discretion to transfer a juvenile to adult court, this "critically important" determination cannot be made without an opportunity for a hearing. Kent v. UnitedStates, 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L. Ed. 2d 84 (1966) ; State v. Salavea 151 Wash.2d 133, 140, 86 P.3d 125 (2004). At the hearing, a juvenile court judge considers factors such as the seriousness of the alleged offense, the juvenile's prio record, home life, and maturity. Kent, 383 U.S. at 566-67, 86 S.Ct. 1045 ; State v. Williams, 75 Wash.2d 604, 606-07, 453 P.2d 418 (1969), overruled in part on other grounds by *840 McRae v. State, 88 Wash.2d 307, 559 P.2d 563 (1977). In Boot, we held that no such hearing is required when the statute mandates certain classes of accused juvenile offenders be automatically declined to adult court without the opportunity for the exercise of judicial discretion. 130 Wash.2d at 571, 925 P.2d 964. I believe it is time to overrule Boot because its substantive due process analysis rests on an assumption we now know to be false in light of new evidence and its application is incorrect and harmful.
¶ 30 The court in Boot relied on the prevailing assumption at the time that juveniles are not categorically less culpable than adults except when the death penalty is imposed. Id. at 571-72, 925 P.2d 964. Case law from the United States Supreme Court and this court provided legal support for the court's conclusion. Id. (citing to Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969, 106 L. Ed. 2d 306 (1989), overruled by Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L. Ed. 2d 1 (2005), to support the proposition juveniles are not categorically less culpable than adults). And because the juveniles in Boot had not been sentenced to death, the court adhered to precedent and held the juveniles' substantive due process challenge failed and they had no right to be heard in juvenile court.
¶ 31 Our understanding of juvenile culpability has changed dramatically over the last 20 years. We now recognize that " 'parts of the brain involved in behavior control' continue to develop well into a person's 20s," and so juveniles differ from adults in their "risk and consequence assessment, impulse control, tendency toward antisocial behaviors, and [their] susceptibility to peer pressure." State v. O'Dell, 183 Wash.2d 680, 691-92, 358 P.3d 359 (2015) (footnotes and internal quotation marks omitted) (quoting Miller v. Alabama, 567 U.S. 460, 472, 132 S.Ct. 2455, 183 L. Ed. 2d 407 (2012) ).
¶ 32 This new knowledge has resulted in a marked shift in the way we treat accused juvenile offenders. When asked whether juveniles should be treated differently than adults, both the United States Supreme Court and this court have consistently answered affirmatively and now "it is the odd legal rule that does not have some form of exception for children." Miller, 567 U.S. at 481, 132 S.Ct. 2455. JD.B. v. North Carolina, 564 U.S. 261, 265, 131 S.Ct. 2394, 180 L. Ed. 2d 310 (2011) (a child's age is relevant in a Miranda custody analysis); Miller, 567 U.S. at 465, 132 S.Ct. 2455 (mandatory juvenile life without parole violates the Eighth Amendment); Graham v. Florida, 560 U.S. 48, 82, 130 S.Ct. 2011, 176 L. Ed. 2d 825 (2010) (juvenile life without parole for nonhomicide offenders violates the Eighth Amendment); Roper v. Simmons, 543 U.S. at 578, 125 S.Ct. 1183 (juvenile death penalty violates the Eighth Amendment); State v. Houston-Sconiers, 188 Wash.2d 1, 9, 391 P.3d 409 (2017) (superior courts have "absolute discretion" to depart from standard sentences when sentencing juveniles in adult court); O'Dell, 183 Wash.2d at 696, 358 P.3d 359 (adult courts may consider youth as a mitigating factor when imposing a sentence on a young adult); S.J.C., 183 Wash.2d at 411, 352 P.3d 749 (article I, section 10 does not apply to statutory sealing of juvenile court records).
¶ 33 The legislature has also reconsidered its approach to juveniles since the unfounded fears of juvenile superpredators gripped the nation in the 1990s. Corrected Br. of Amici Curiae Creative Justice, Cmty. Passageways, & Glover Empower-Mentoring Program at 3-4. Recent policy decisions are in lockstep with recent judicial decisions and evidence an understanding that adolescent brain development must inform how juveniles are adjudicated. In 2018, the legislature amended the statute at issue in this case, RCW 13.04.030(l)(e)(v), and removed first degree burglary and other Crimes from those that result in automatic decline of an accused juvenile offender. LAWS OF 2018, ch. 162, § 1. The legislature also took the extraordinary step of extending juvenile court jurisdiction to age 25, recognizing that a juvenile does not instantly mature into an adult at age 18 or even 21. Id. While the majority correctly notes that the constitutionality of the amended legislation is not properly before this court, the majority errs when it dismisses it as "ha[ving] no bearing on our resolution" of this case. Majority at 832 n. 1.
*841 I disagree. We should view the legislature's recent amendment as consistent with the growing body of law and science that affirms the fundamental principle that "children are different." State v. Houston-Sconiers, 188 Wash.2d 1, 18, 391 P.3d 409 (2017) (citing Miller, 567 U.S. at 481, 132 S.Ct. 2455 ).
¶ 34 Despite how much has changed since Boot, the majority concludes that juvenile court jurisdiction is not necessary to protect the substantive due process rights of juveniles because adult courts have discretion to deviate from standard sentences. Majority at 838-39 (citing Houston-Sconiers, 188 Wash.2d at 21, 391 P.3d 409 ). But the burden of convincing the trial court to exercise that discretion in favor of the youthful offender lies with the juvenile. State v. Ramos, 187 Wash.2d 420, 445, 387 P.3d 650 (2017). And other burdens fall on the juvenile charged in adult court, including an adult conviction record, the lack of confidentiality, the emphasis on punishment over rehabilitation, and adult postsentencing conditions. Since those burdens remain, the substantive due process question remains. And Boot's answer to that question-which relied on the assumption that juveniles are not categorically less culpable than adults-is incorrect.
¶ 35 I would resolve this case by applying the fundamental principle that children are different. As the Supreme Court explained in Kent, "[i]t would be extraordinary if society's special concern for children ... permitted" a judge to order a juvenile transferred to adult court without the opportunity for a hearing. 383 U.S. at 554, 86 S.Ct. 1045. I agree. And I believe, taken as a whole, our precedent unmistakably supports applying this conclusion to all accused juvenile offenders. I am unwilling to accept the premise that it is constitutionally permissible to arbitrarily carve out certain classes of accused juvenile offenders and deprive them of the right or opportunity to be heard in juvenile court before being transferred to adult court. It creates an unacceptable risk that juveniles will be subjected to convictions, stigma, conditions, and punishments that are disproportionate to their crimes. I similarly do not believe that a decision "of such tremendous consequences" can rest solely on prosecutorial discretion because the reality is that political pressure may actually encourage prosecutors to transfer youth to adult court in order to seek harsher sentences available only in adult court. Id. at 554, 86 S.Ct. 1045.
¶ 36 I would therefore reverse the trial court and hold that former RCW 13.04.030(1) is inconsistent with our case law and violates fundamental notions of due process. I would further hold that juveniles cannot be transferred to adult court without a hearing conducted by a juvenile court judge. The judge should consider the individual circumstances of the case, such as the juvenile's age, maturity, and offender history; the strength of the prosecutor's case; and the nature of the alleged offense, including whether it was violent and how many youth were involved.
CONCLUSION
¶ 37 It is the status of being a juvenile, and not the specific offending behavior at issue, that triggers differing protections for youth. Auto-decline statutes, however, require certain accused juvenile offenders to be treated as adults based on their alleged crimes, without any opportunity for a discretionary judicial determination that the particular juvenile at issue should, in fact, be treated as an adult. Juveniles have a right not to be automatically treated as adults. This requires a juvenile court to conduct a hearing at which it considers the individual juvenile who has been charged with a particular offense in order to determine whether adult criminal court is the right place for that person. I respectfully dissent.

"Decline" is a misnomer because it implies that juvenile court had jurisdiction over the youth and then chose not to exercise it. In fact, an auto-decline statute entirely strips juvenile court of its jurisdiction over the youth; there is no jurisdiction to decline.

Pursuant to former RCW 13.04.030(l)(e)(v) (2009), a juvenile offender who is at least 16 years old on the date of the alleged offense is automatically excluded from juvenile court for certain alleged offenses. It is undisputed that in this case Tyler William Watkins was at least 16 years old on the date of the offense, and he was charged with one count of burglary in the first degree. Therefore, pursuant to RCW 13.04.030(l)(e)(v)(D), the superior court had exclusive original jurisdiction and Watkins had no statutory right to be tried in juvenile court.